# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| BRIAN HILL, JASON MATHIS, and CRUZ VASQUEZ, each individually and on behalf on all others similarly situated, § § § § § | |
| *Plaintiffs,* § § | Civil Action No. 4:22-CV-518 |
| v. § § | Judge Mazzant |
| FRITO-LAY, INC., § § § | |
| *Defendant.* § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion to Transfer Venue or, in the Alternative, to Stay (Dkt. #8). Having considered the motion and the relevant pleadings, the Court finds that the motion should be **GRANTED in part.**

### BACKGROUND

This case arises out of a timekeeping system, Kronos, that was inoperable for months, impacting employers nationwide. During that time, employees allege that Defendant Frito-Lay, Inc. ("Frito-Lay") failed to compensate employees with overtime pay, which is legally required under the Fair Labor Standards Act ("FLSA") and various state statutes when the employees work more than forty (40) hours a week. 29 U.S.C. § 207(a); ARK. CODE § 11-4-211; WASH. REV. CODE § 49.46.130(a).

In 2021, Plaintiffs Brian Hill, Jason Mathis, and Cruz Vasquez (collectively, "Hill") were employed by Frito-Lay and used Kronos, a timekeeping software that was implemented by Frito-Lay, to record the amount of hours they worked each week (Dkt. #1 at ¶¶ 16–18, 22). In or around November 2021, Kronos was hacked, and the entire system was rendered inoperable until

"February or March of 2022" ("Kronos Blackout") (Dkt. #1 at ¶¶ 23–24).  Hill alleges that during the Kronos Blackout, numerous employees, including themselves, regularly worked over forty hours a week but did not receive 1.5 times their regular rate of pay.

On June 22, 2022, Hill filed the current lawsuit, which included individual actions under the FLSA, the Arkansas Minimum Wage Act, the Washington Minimum Wage Act, the Washington Wage Rebate Act, as well as a putative collective action under the FLSA on behalf of all others similarly situated (the "*Hill* lawsuit") (Dkt. #1).

However, almost five-months earlier, on January 31, 2022, Emanuele Stevens filed a similar lawsuit regarding the Kronos Blackout against three defendants—PepsiCo Inc., Bottling Group, LLC, and CB Manufacturing Co.—which included individual actions under the FLSA and the Ohio overtime compensation statute, a putative class action proposing a state class of Ohio employees, as well as a putative collective action under the FLSA on behalf of all others similarly situated (the "*Stevens* lawsuit").  Complaint at 13–18, *Stevens v. PepsiCo Inc., et al.*, No. 7:22-CV-802 (S.D.N.Y. Jan. 31, 2022), ECF No. 1.  The complaint has since been amended, adding plaintiffs, defendants, and various claims, combining numerous related cases that were transferred to the Southern District of New York.[1]

The live complaint in the *Stevens* lawsuit currently has eighteen (18) named plaintiffs and twenty-two (22) named defendants, including Frito-Lay.  The claims now include a putative class action with three proposed classes.  There is a national class, which represents a class of individuals with factually similar claims under the wage-and-hour statutes of various state labor laws, a

---

[1] Since the subject of this motion is the first-to-file rule, the Court will note that amending a complaint does not change the analysis in answering the question of who filed first when the "amended complaint is not so different from [the] original complaint." *On Semiconductor, Corp. v. Samsung Elecs. Co.*, No. 6:06-CV-523, 2007 WL 9697790, at *2 (E.D. Tex. June 21, 2007).  The Court finds that in the *Stevens* lawsuit, both the original complaint and amended complaint concern the Kronos Blackout, and therefore, the day the original complaint was filed, January 31, 2022, will control for the *Stevens* lawsuit to answer the question of the first filed court.

California subclass, and a New York subclass, which both have statutory penalties available to employees for an employer's failure to provide accurate wage statements and violating unfair competition laws. Additionally, the plaintiffs are still asserting a putative collective action under the FLSA. It is alleged that the FLSA collective action and the national class could consist of 69,809 employees, assuming every employee affected by the Kronos Blackout selects to opt in to the collective action or decides not to opt out of the national class. Amended Complaint, *Stevens v. PepsiCo Inc., et al.*, No. 7:22-CV-802 (S.D.N.Y. July 15, 2022), ECF No. 55.

On August 19, 2022, Frito-Lay filed the pending motion, requesting the Court to transfer the entire *Hill* lawsuit to the Southern District of New York based on the first-to-file rule, or as an alternative, stay the case "pending the approval and administration of the *Stevens* settlement" (Dkt. #8 at p. 6). On September 2, 2022, Hill opposed the motion and filed a response, arguing that the first-to-file rule should not apply to the *Hill* lawsuit and that a stay should not be granted (Dkt. #12). On September 9, 2022, Frito-Lay filed a reply (Dkt. #13).

## LEGAL STANDARD

### I. First-to-File Rule

"Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). This rule exists to support "comity and sound judicial administration" among the federal courts. *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997); *see Wapp Tech Ltd. P'ship v. Micro Focus Int'l, PLC*, 406 F. Supp. 3d 585, 599 (E.D. Tex. 2019) ("The first-to-file rule is a venue and efficiency consideration, not an adjudication on the merits or a question of jurisdiction."). "The rule's ultimate aim is to avoid three potential, undesirable outcomes: (1) 'the waste of duplication,' (2) 'rulings which may trench upon the authority of sister courts,' and

(3) 'piecemeal resolution of issues that call for a uniform result.'" *In re Toyota Hybrid Brake Litig.*, No. 4:20-CV-127, 2020 WL 6161495, at *5 (E.D. Tex. Oct. 21, 2020) (quoting *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 729 (5th Cir. 1985)). "'When related cases are pending before two federal courts,' the first-to-file rule generally allows 'the court in which the case was last filed to refuse to hear it if the issues raised by the cases substantially overlap.'" *Id*. (brackets omitted) (quoting *Int'l Fid. Ins. Co. v. Sweet Little Mex. Corp.*, 665 F.3d 671, 677–78 (5th Cir. 2011)).

To determine if substantial overlap exists, courts in the Fifth Circuit examine "whether 'the core issue was the same' or if 'much of the proof adduced would likely be identical.'" *Int'l Fid. Ins. Co.*, 665 F.3d at 678 (footnote and ellipses omitted) (first quoting *W. Gulf Mar. Ass'n*, 751 F.2d at 730; then quoting *Mann Mfg., Inc. v. Hortex Inc.*, 439 F.2d 403, 407 (5th Cir. 1971)). Though the cases need not be identical for the first-to-file rule to apply, *In re Amerijet Int'l, Inc.*, 785 F.3d 967, 976 (5th Cir. 2015) (per curiam), they "must be 'more than merely related.'" *Brocq v. Lane*, No. 3:16-CV-2832, 2017 WL 1281129, at *2 (N.D. Tex. Apr. 6, 2017) (quoting *Buckalew v. Celanese, Ltd.*, No. G-05-315, 2005 WL 2266619, at *2 (S.D. Tex. Sept. 16, 2005)). If overlap between the cases is less than complete, courts have looked to additional factors, such as "the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Save Power Ltd.*, 121 F.3d at 951 (internal quotation marks omitted) (quoting *TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996)). If substantial overlap exists, "the proper course of action is for the court to transfer the case to the first-filed court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed." *Wells Fargo Bank, N.A. v. W. Coast Life Ins.*, 631 F. Supp. 2d 844, 847 (N.D. Tex. 2009) (citing *Cadle*, 174 F.3d at 606); *see also Tex. Health Mgmt. LLC v.*

*HealthSpring Life & Health Ins. Co., Inc.*, 380 F. Supp. 3d 580, 588 n.6 (E.D. Tex. 2019) (affirming that district courts should not act as "super appellate court[s]" when applying the first-to-file rule).

But a finding of substantial overlap does not end the inquiry. *In re Toyota Hybrid Brake Litig.*, 2020 WL 6161495, at *6. Mechanical application of the first-to-file rule is not required on every occasion and may very well be inappropriate in specific instances. *See, e.g.*, *Hunt-Collin Elec. Co-op, Inc. v. Rayburn Country Elec. Co-op, Inc.*, No. S-87-211, 1988 WL 428654, at *2 (E.D. Tex. Feb. 5, 1988) ("Blindly applying the first-to-file rule only on the basis of the actual filing dates . . . would not further the goals of the rule." (cleaned up)). Only "[i]n the *absence* of compelling circumstances" should it be employed. *Mann Mfg., Inc.*, 439 F.2d at 407 (emphasis added). While the Fifth Circuit has provided limited "guidance or examples as to what sort of circumstances it would consider 'compelling,'" *Twin City Ins. Co. v. Key Energy Servs., Inc.*, No. H-09-0352, 2009 WL 1544255, at *4 (S.D. Tex. June 2, 2009), rigidly applying the first-to-file rule when compelling circumstances present themselves leads to the abandonment of the "comity principles that underlie the . . . rule" itself. *W. Gulf Mar. Ass'n*, 751 F.2d at 730; *see also, e.g.*, *Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 n.8 (5th Cir. 1985).

## II.  Staying Proceedings

The district court has inherent power to control its own docket, including the power to stay proceedings. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). How to best manage the court's docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). "In deciding whether to exercise the discretion to stay litigation, the Court should consider the interests of each party, as well as the conservation of judicial resources." *Miller Weisbrod, LLP v. Klein Frank, PC*, No. 3:13-CV-2695-B, 2014 WL 2738231, at *2 (N.D. Tex. June 17, 2014) (citations omitted). Additionally, when a

stay is premised on the resolution of another case, "the court must carefully consider the time reasonably expected for resolution of the 'other case,' in light of the principle that 'stay orders will be reversed when they are found to be immoderate or of an indefinite duration.'" *Wedgeworth v. Fireboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983) (quoting *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982)).

## ANALYSIS

Frito-Lay requests that the Court transfer the *Hill* lawsuit to the Southern District of New York because a "substantially similar" case—the *Stevens* lawsuit—was filed almost six months prior and is currently being adjudicated in that court. In the alternative, Frito-Lay requests that the Court stay the pending case to prevent "[r]equiring Frito-Lay to concurrently adjudicate [the] *Hill* [lawsuit] in Texas" and the *Stevens* lawsuit in New York (Dkt. #8 at p. 7). Ultimately, the Court finds that the first-to-file rule and related equitable principles do not support a transfer of all claims in this case. However, given the status of the *Stevens* lawsuit, the Court recognizes that as of date, Hill has likely lost certain opportunities to participate in the *Stevens* lawsuit. Therefore, the Court's conclusion will include options for each plaintiff and will allow them to choose how to proceed. The Court will start by discussing the first-to-file rule.

**I.  A Transfer of All Claims is Not Supported by the First-to-File Rule**

Utilizing certain discretion under the first-to-file rule, a court may transfer an action if another federal court is adjudicating a case that was first-filed and the "issues raised by the cases substantially overlap." *Whataburger of Alice*, 174 F.3d at 603. Hill does not directly dispute Frito-Lay's classification of the *Stevens* lawsuit "as the first-filed action in New York" in their briefing (Dkt. #8 at p. 8). The Court concludes that the *Stevens* lawsuit was filed first. The next question that must be decided is if the two cases substantially overlap.

### A.  Substantial Overlap

In determining whether the two lawsuits substantially overlap, the Fifth Circuit has made it clear that the claims "need not be identical" for the first-to-file rule to apply. *In re Amerijet Int'l, Inc.*, 785 F.3d at 976.  However, as far as viewing the collective actions between the two lawsuits, they are *almost* identical.  Both are requesting a collective action consisting of employees who were impacted by the Kronos Blackout under the FLSA because they were not properly paid for the overtime hours they worked during that time.  There are two main differences between the *Stevens* and *Hill* lawsuits.  First, the *Stevens* lawsuit has a putative collective action that is broader, encompassing all employees who worked at PepsiCo and New Tiger LLC, as well as its numerous subsidiaries during the relevant time, rather than the single PepsiCo subsidiary involved in the *Hill* lawsuit.  Preliminary Approval Order at 3, *Stevens v. PepsiCo Inc., et al.*, No. 7:22-CV-802 (S.D.N.Y. Dec. 2, 2022), ECF No. 73.  Additionally, the proposed time periods between the two collective actions vary and while they do not cover the exact same dates, it is generally the same period (*See* Dkt. #1 at pp. 6–7) (stating that the proposed period in the *Hill* lawsuit is "between November of 2021 and March of 2022").  However, these minor differences will not change the analysis here.  Because despite those two changes, the Court finds that that "the core issue[s] [are] the same" and that "much of the proof adduced would likely be identical." *Int'l Fid. Ins. Co.*, 665 F.3d at 678.  In fact, courts have routinely found this to be the case when the second-filed lawsuit can be viewed as subsumed by the first-filed lawsuit, as is the case here when only looking at the putative collective actions. *See Barnes v. Sandbox Transp., LLC,* No. MO:18-CV-050, 2018 WL 11471781, at *3 (W.D. Tex. June 16, 2018); *Crestview Farm, L.L.C. v. Cambiaso*, No. 4:20-CV-01288, 2021 WL 1383135, at *4 (N.D. Tex. Apr. 13, 2021); *accord Chieftain Royalty Co. v. XTO Energy, Inc.*, No. CIV-11-29, 2011 WL 1533073, at *2 (E.D. Okla. Apr. 22, 2011).

However, there are other claims in both lawsuits. In the *Stevens* lawsuit, there is a proposed national class that has received preliminary approval for the class action claim. The class includes employees that could recover from various state statutes, Arkansas and Washington included. Amended Complaint at 6, *Stevens v. PepsiCo Inc., et al.*, No. 7:22-CV-802 (S.D.N.Y. July 15, 2022), ECF No. 55. The only statute that is likely not incorporated with the national class that is present in the *Hill* lawsuit, is potential recovery under the Washington Wage Rebate Act. Under that statute, an employer who "willfully and with intent" deprived an employee of their wages that they are owed under a statute, the employer "shall be guilty of a misdemeanor." WASH. REV. CODE § 49.52.050.

Since there is not perfect overlap between the two lawsuits, the Court will look at "the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Save Power Ltd.*, 121 F.3d at 951; *see also Salazar v. Bloomin' Brands, Inc.*, No. 2:15-CV-105, 2016 WL 1028371, at *4 (S.D. Tex. Mar. 15, 2016) (applying the factors from *Save Power Ltd.* after pointing out that the second-filed lawsuit had state-law claims that differed from the first-filed FLSA lawsuit). Here, the extent of overlap favors transfer, as the two lawsuits are almost identical, with the *Stevens* lawsuit being a bit more complicated and Hill's ability to show that Frito-Lay should be guilty of a misdemeanor. *See Needbasedapps, LLC v. Robbins*, 926 F. Supp. 2d 919, 932–34 (W.D. Tex. 2013) (finding that despite small differences, the "overlap [was] significant"). While the likelihood of conflict typically rules in favor of transfer in this case, it is unlikely that they will occur here. In the *Stevens* lawsuit, there is a pending Settlement Agreement between the parties that is awaiting final approval from the New York court. In that Settlement Agreement, PepsiCo and its affiliates explicitly state in the contract that they "explicitly deny any wrongdoing or any violation of state or federal law as alleged in the

Class/Collective Actions." Settlement Agreement with Exhibits at 4, *Stevens v. PepsiCo Inc., et al.*, No. 7:22-CV-802 (S.D.N.Y. July 15, 2022), ECF No. 57, Exhibit 1. Assuming the New York court accepts the Settlement Agreement, a fact-finder will not have to make a determination regarding responsibility, meaning that if the *Hill* lawsuit continues in this Court, it is unlikely that there would be a conflict. However, allowing the *Hill* lawsuit to continue simultaneously with the *Stevens* lawsuit would likely cause some harm to Frito-Lay and the Court will later address those concerns. Finally, as to the advantages of the forum, this factors also favors transfer. In the *Stevens* lawsuit, there are specific state classes that are carved-out, including a California class and a New York class, giving the New York court some advantage in hearing the dispute. *See Amalgamated Gadget, L.P. v. Healthsouth Corp.*, No. 4:04-CV-198, 2004 WL 1283949, at *2 (N.D. Tex. June 9, 2004) (discussing this factor and when "local citizens" are involved, the forum has a valid interest). This is important because in the *Hill* lawsuit, the only time that Texas residents would be included is if the collective action was accepted. Additionally, the Court will point out that it is at least the intention of the parties in the *Stevens* lawsuit to have all the claims surrounding the Kronos Blackout to be consolidated in one lawsuit. This is made clear in the proposed Settlement Agreement. *See* Settlement Agreement with Exhibits at 4, *Stevens v. PepsiCo Inc., et al.*, No. 7:22-CV-802 (S.D.N.Y. July 15, 2022), ECF No. 57, Exhibit 1 (stating that upon preliminary approval, the court should "enjoin[] any pending action filed in any court that is not transferred to the Southern District of New York that asserts any FLSA claim and/or any state law" claim dealing with the Kronos Blackout). Given the resources and time the New York court has already spent on the case, this factor also likely favors transfer. *See Benavides v. Home Depot USA, Inc.*, No. H-06-0029, 2006 WL 1406722, at *2 (S.D. Tex. May 19, 2006) (considering factor that other case has progressed "significantly farther").

### B. Compelling Circumstances

The Court must then conduct an analysis if any compelling circumstances are at play.[2] This is because "[b]lindly applying the first-to-file rule only on the basis of the actual filing dates" is disfavored. *See Hunt-Collin Elec. Co-op, Inc.*, 1988 WL 428654, at *2. The factors guiding this rule's application are ultimately "equitable in nature." *Hart v. Donostia LLC*, 290 F. Supp. 3d 627, 630 (W.D. Tex. 2018) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183–84 (1952)). Generally, these circumstances exist based on the conduct of the parties. *See Barnes*, 2018 WL 11471781, at *2. However, the particular case is unique not because of the parties' conduct but because of the timing aspect. Specifically, when looking at both the status of the *Stevens* lawsuit as well as the deadlines that have already passed for the plaintiffs in this lawsuit, the Court finds that there are compelling circumstances in this case that do not allow for the entirety of the *Hill* lawsuit to be transferred based on the first-to-file rule.[3]

---

[2] The Court disagrees with Frito-Lay's contention that the first-to-file rule "involves a single inquiry" for the second-filed court of whether the two cases have substantial overlap (Dkt. #13 at p. 4). *See In re Toyota Hybrid Brake Litig.*, 2020 WL 6161495, at *6. Of course, the second-filed court generally limits its analysis to whether there is a likelihood of substantial overlap between the two cases, and, if so, whether to dismiss, stay, or transfer the second case. *See, e.g.*, *Brocq v. Lane*, No. 3:16-CV-2832, 2017 WL 1281129, at *2 (N.D. Tex. Apr. 6, 2017). But the first-to-file rule is ultimately a discretionary doctrine that should not be applied mechanically. *In re Toyota Hybrid Brake Litig.*, 2020 WL 6161495, at *6. To this end, courts in the Fifth Circuit have identified two common situations in which compelling circumstances caution against the mechanical application of the first-to-file rule: (1) the "bad faith" exception and (2) the anticipatory filing exception. *Id.* at *7 (citing *Chapa v. Mitchell*, No. 1:05-CV-769, 2005 WL 2978396, at *2 (W.D. Tex. Nov. 4, 2005)). And while both of these exceptions are generally for the first-filed court to decide, it is also true that the presence of other unique and compelling circumstances may still be for the second-filed court to decide. *Compare Platt v. Nash*, No. 4:16-CV-294, 2016 WL 6037856 (E.D. Tex. Oct. 14, 2016) ("[T]he question of whether the first-filed action was an anticipatory filing is for the [first-filed court] to determine."), *with LifeNet, Inc. v. United States Dep't of Health and Human Servs.*, ___ F. Supp. 3d ___, No. 6:22-CV-162, 2022 WL 29559715, at *5 (second-filed court that found compelling circumstances were at play because a transfer "would waste judicial resources"). And so, as the second-filed court, the Court will analyze whether there are unique compelling circumstances in this case.

[3] The Court notes that Hill argues that the Court should apply certain 1404(a) factors in its analysis for compelling circumstances (Dkt. #12 at pp. 2–3). However, as the Court has previously held, it is "generally unnecessary to apply the § 1404 convenience factors in the context of the first-to-file analysis." *Walsh v. Peterson*, No. 4:21-CV-867, 2022 WL 3088086, at *4 (E.D. Tex. Aug. 3, 2022) (quoting *Truinject Corp. v. Nestlé S.A.*, No. 4:20-CV-457, 2020 WL 6781578, at *3 (E.D. Tex. Nov. 18, 2020)). The Court finds no reason to stray away from its previous rulings, and therefore, the Court will not address Hill's arguments on these factors.

10

In the *Stevens* lawsuit, as previously discussed, there is a putative class action and a putative collective action. On December 2, 2022, the New York court preliminary approved the class action and collective action for the purposes of engaging in settlement. What this means is that for the class action, every affected employee was notified and had an opportunity to opt out from receiving the benefits of the class action. *See Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 (5th Cir. 2008) (explaining how 216(b) of the FLSA allows plaintiffs to opt in for a collective action versus how Federal Rule of Civil Procedure 23(c) provides plaintiffs to opt out for class actions). All three plaintiffs in this case should have received that same notice, informing them that they would have to take action in order to not receive those benefits. However, the affected employees also were informed that they would have to opt out from the national class if they wished to pursue their individual claims or other related lawsuits against the defendants. The deadline to opt out of the national class was February 6, 2023, which has already passed. Assuming that the three plaintiffs in this case have opted out of the national class, they have lost their opportunity to receive the certain benefits that have been allocated for the national class.[4] However, the same is not true for the FLSA collective action. Because the nature of the collective action is different, the opt in period for that class will not begin until after the Settlement Agreement has been approved. The *Stevens* lawsuit has a Final Approval Hearing scheduled for April 4, 2023. This means that the three plaintiffs in the *Hill* lawsuit still have the opportunity to pursue their collective action claims, despite not having the opportunity to participate in the class action.

The Court ultimately finds that, based in equity, the Court will *sua sponte* sever the collective action claim into a new case, and transfer that putative collective action under the FLSA

---

[4] The Court makes this assumption because Hill has represented to the Court that they would be opting out "of any *Stevens* settlement as soon as they are permitted to do so" (Dkt. #12 at p. 1). If they did not choose to opt out in this case, then Hill would be precluded from recovering under this action. *See Akins v. Worley Catastrophe Response*, LLC, 921 F. Supp. 2d 593, 603 (E.D. La. 2013).

11

to the Southern District of New York. The Court will keep the remaining individual claims for the *Hill* lawsuit. *Benavides*, 2006 WL 1406722, at *2 (granting a severance and transferring the collective action upon request of the parties because claims were identical); *Center for Restorative Breast Surgery, LLC v. Blue Cross Blue Shield of LA,* No. 06-9985, 2007 WL 1796196, at *1 (E.D. La. June 18, 2007) (same result along with discussing that Federal Rule of Civil Procedure 21 is the appropriate rule for severance under the first-to-file rule); *Joseph v. Signal Int'n L.L.C.*, No. 1:13-CV-324, 2014 WL 12721391, at *3 (E.D. Tex. Dec. 8, 2014) (finding that a court had the authority to sever claims and transfer them *sua sponte* under Rule 21). The Court recognizes that this is a unique remedy, one that should seldom be used when it was not requested by the parties. However, it is appropriate in this specific case given the nature of the two pending lawsuits and recognizing that the plaintiffs in the *Hill* lawsuit have lost certain opportunities while still having a chance to pursue certain claims.

Essentially, this decision provides the plaintiffs in this case with two options, either to pursue claims through the collective action in the *Stevens* lawsuit, or to choose to pursue their individual claims in the *Hill* lawsuit. The main reason the Court is exploring this option is because of the likelihood that the plaintiffs in this case have taken certain steps to allow their claims to be pursued and losing certain opportunities as a result, but also recognizing the importance of the first-to-file rule. The Court finds that allowing the plaintiffs to choose between the two options is the best option in equity, as they can join a collective action under the FLSA, as they intended to do with the pending lawsuit, or pursue their individual claims, because they likely opted out of the national class in the *Stevens* lawsuit operating under the idea that their pending claims would be heard by this Court. Additionally, the Court finds that this result adheres to the policy goals of the first-to-file rule. The first-to-file rule aims to avoid duplication, "rulings which may trench upon

the authority of sister courts," and a "piecemeal resolution of issues that call for a uniform result." *In re Toyota Hybrid Brake Litig.*, 2020 WL 6161495, at *5. This decision prevents any duplication, will not allow for any conflicting rulings between the two courts, and will not result in a "piecemeal resolution," because the plaintiffs in the *Hill* lawsuit will either pursue the collective action or their individual claims, and they will be prohibited from doing both. In coming to this conclusion, it will be up to the New York court to decide how to treat Hill's collective action claim under the FLSA. *See Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997).

## II. A Stay is Appropriate for the Remaining Claims

The remaining claims in the *Hill* lawsuit are the individual claims pursued by the three plaintiffs under the FLSA and the relevant Arkansas and Washington statutes. Frito-Lay requests that the Court should "stay the *Hill* case pending the approval and administration of the *Stevens* settlement" (Dkt. #8 at p. 6). The Court finds that this is appropriate. *See Yeti Coolers, LLC v. Ontel Products Corp.*, No. 1:16-CV-1283, 2017 WL 8182753, at *1 (W.D. Tex. Aug. 14, 2017) ("The [first-to-file] rule grants federal district courts the discretion to dismiss, stay, or transfer a later-filed action in favor of the first-filed action and therefore avoid duplicative litigation.") (citing *W. Gulf Mar. Ass'n*, 751 F.2d at 728–31); *see also Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1008–11 (N.D. Ill. 2009) (granting motion to stay pursuant to court's inherent power when similar actions were pending in different federal courts).

The Court will use its inherent authority to stay the case for a few reasons. First, it is possible that Frito-Lay will not have to continue with the *Hill* lawsuit because if all the plaintiffs choose to join the collective action in the *Stevens* settlement, the claims in the *Hill* lawsuit will have to be dismissed under the doctrine of res judicata. *See Akins*, 921 F. Supp. 2d at 603. Additionally, even if the plaintiffs in the *Hill* lawsuit choose to pursue their individual claims in the *Hill* lawsuit, the Court will at the very least stay the proceedings to allow Frito-Lay to finish

13

the *Stevens* lawsuit. The Court finds no issue with this because it is the Court's understanding that the *Stevens* lawsuit is near its close.

In sum, because of the current status of the two pending lawsuits, the Court finds it appropriate to transfer the collective action under the FLSA to the Southern District of New York, as that court will be better suited to decide how the case will proceed. As to the remaining claims, the Court will stay the proceedings, pending the conclusion of the *Stevens* lawsuit.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion to Transfer Venue or, in the Alternative, to Stay (Dkt. #8) will be **GRANTED in part.** The collective action claim for FLSA violations under the plaintiff's "Second Claim for Relief" will be transferred.

It is further **ORDERED** that the clerk will sever this action and transfer the severed case to the Southern District of New York because of the related case, *Stevens v. PepsiCo Inc., et al.*, Case No. 7:22-CV-802.

It is further **ORDERED** that all remaining claims and pending deadlines in this case are hereby **STAYED** pending the resolution of the Southern District of New York's related case.

It is further **ORDERED** that the parties shall notify the Court within seven (7) days of the Southern District of New York's issuance of a Final Judgment and include a description of the court's ruling as to the proposed Settlement Agreement.

**IT IS SO ORDERED.**
**SIGNED** this 3rd day of April, 2023.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE