# EXHIBIT B

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| EMANUELE STEVENS, *individually and on behalf of all others similarly situated,* | ) ) ) | |
| Plaintiff, | ) ) | CASE NO. 7:22-CV-00802-NSR |
| *v.* | ) ) ) | |
| PEPSICO INC., BOTTLING GROUP, LLC, and CB MANUFACTURING COMPANY, INC. | ) ) ) ) | |
| Defendants. | ) ) | |

### SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made this 6th day of July 2022, by and between Plaintiff Emanuele Stevens ("Stevens"), Moises Madriz, Rodney Ulloa, Ricardo Vidaud, Seth Marshall, Matthew White, Tyrell King, Kennetha Mitchell, Donedward White, Jamal Winger, Allison Poulson, Robney Irving-Millentree, Tracy Ellis, Thomas Parrish, Devin Dobsch, Joshua Smith, Jacob Tschudy, and Jorge Mendoza (together "Plaintiffs"), on behalf of themselves, and on behalf all persons who were employed in the United States by PepsiCo, Inc., New Tiger LLC, and their various respective divisions and subsidiaries, a list of which is attached hereto as Exhibit A (collectively, "Defendants"), pertaining to Defendants' alleged failure to accurately pay them for all hours worked during the seventeen pay periods between December 5, 2021 and April 8, 2022 (the "Class Period") due to Defendants' payroll provider, the Ultimate Kronos Group ("Kronos"), experiencing a cybersecurity incident that began on December 11, 2021 through February 12, 2022 (the "Kronos Outage"). Plaintiffs and Defendants are collectively referred to herein as the "Parties" and individually referred to as "Party."

WHEREAS, on January 31, 2022, Stevens commenced litigation in the U.S. District Court for the Southern District of New York (the "Court") captioned *Emanuele Stevens, Individually and on Behalf of All Other Persons Similarly Situated v. PepsiCo, Inc., Bottling Group, LLC, and CB Manufacturing Company, Inc.,* No. 7:22-cv-00802 (the "*Stevens Action*"), in which he asserted claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA claims") and the Ohio Labor Law, O.R.C. Chapter 4111, *et seq.,* arising out of Defendants' alleged failure to appropriately compensate individuals who were employed by PepsiCo, Inc., Bottling Group, LLC and CB Manufacturing Company, Inc. in the United States during the Class Period for all hours worked per workweek due to the Kronos Outage;

WHEREAS, Stevens has brought the FLSA and state law claims asserted in the *Stevens Action* as a nationwide collective action pursuant to 29 U.S.C. § 216(b) (the "FLSA Collective") and as a nationwide class action pursuant to Fed. R. Civ. P. 23, on behalf of other similarly

1

situated current and former employees who worked for Defendants nationwide during the Class Period ("National Class");

WHEREAS, the following related FLSA collective and/or state law class actions have also been filed by various plaintiffs, through the undersigned counsel ("Plaintiffs' Counsel") in other Federal courts, which, individually or collectively, asserted unpaid wage claims on behalf of all employees of the Defendants affected by the Kronos Outage:

1. *Drobsch v. PepsiCo, Inc.*, No. 2:22-cv-00550-WSS (W.D. Pa.)
2. *Ellis v. PepsiCo,. Inc.*, No. 2:22-cv-01895-JMV-LDW (D.N.J.)
3. *Irving-Millentree v. PepsiCo, Inc.*, No 4:22-cv-00284-ALM (E.D. Mo.)
4. *King v. PepsiCo, Inc.*, No. 4:22-cv-00360-KGB (E.D. Ark)
5. *Madriz et al. v. PepsiCo, Inc., at al.*, No. 5:22-cv-00549-JGB-KK (C.D. Cal).
6. *Marshall v. PepsiCo, Inc., et al.*, No. 7:22-cv-02370-PMH (S.D.N.Y.)
7. *Mitchell v. PepsiCo., Inc.*, No 3:22-cv-00421-TJC-JBT (M.D. Fla.)
8. *Parrish v. Frito-Lay North America, Inc.*, No. 4:22-cv-00284-ALM (E.D. Tex.)
9. *Poulson v. PepsiCo, Inc., et al.*, No. 1:22-cv-00725-RLY-DML (S.D. Ind.)
10. *Smith v. PepsiCo., Inc.*, No. 3-22-cv-00184-HEH (E.D. Va.)
11. *Tschudy v. PepsiCo., Inc.*, 3:22-cv-00210-WMC (W.D. Wis.)
12. *Vidaud v. PepsiCo, Inc.*, No. 2:22-cv-02713-ODW-KS (C.D. Cal.)
13. *White v. PepsiCo, Inc.*, No. 1:22-cv-02066 (N.D. Ill.)
14. *Winger v. The Quaker Oats Co.*, No. 1:22-cv-02023 (N.D. Ill)

These actions are collectively referred to as the "Class/Collective Actions."

WHEREAS, as of June 27, 2022, two hundred eighteen (218) individuals have filed consents to join the FLSA Collective as party plaintiffs in one or more of the Class/Collective Actions asserting FLSA claims and various state law wage and hour related claims against Defendants;

WHEREAS, the Parties determined to attempt to resolve the Class/Collective Actions on a global basis and retained Martin Scheinman, Esq., to assist in that effort. After the provision of data and other information from Defendants and upon investigation by Plaintiffs of the claims in the Class/Collective Actions, the Parties participated in a full-day mediation session facilitated by Mr. Scheinman on April 22, 2022, which mediation session included discussion between the Parties as to the claims in the lawsuit, but were unable to reach an agreement on that date. After consideration of additional information, including further information requested by Plaintiffs and provided by Defendants to Plaintiffs, the Parties agreed to resume their efforts on May 3, 2022, before Mr. Scheinman, and after another full-day mediation, the Parties were able to reach the agreement which is reflected in in this Agreement;

WHEREAS, Plaintiffs represent that they have conducted a thorough investigation into the facts relating to the claims asserted in the Class/Collective Actions and that could be asserted in the Class/Collective Actions and are of the opinion and belief that the settlement described herein is fair, reasonable, adequate and in the best interests of all in light of all known facts and circumstances, including the considerable expense of discovery and litigation, defenses that

2

could be asserted by Defendants, uncertainty of the result through continued litigation and appeal, and the risks of delay and an adverse judgment; and

WHEREAS, in order to avoid the expense and burdens of further litigation, the Parties desire to resolve any and all suits, actions, causes of action, claims, or demands based on putative violations of the FLSA as well as putative violations of any state law related or pertaining to any and all claims under the FLSA and State laws relating to or arising out of the Kronos Outage, including, without limitation, all state, local, and federal claims for unpaid wages (whether minimum wage or overtime), failure to timely pay wages, failure to record hours worked, paystub requirements, reimbursement, and all related claims for statutory damages or penalties, interest, liquidated damages, attorneys' fees, costs, expenses, and all other such amounts, and including, without limitation, all claims that have been asserted in the Class/Collective Actions or that could have been asserted in the Class/Collective Actions nationwide;

NOW, THEREFORE, in consideration of the foregoing premises and the mutual promises hereinafter set forth, the Parties agree as follows:

### 1. No Admission of Liability or Concession as to the Merits

Defendants expressly deny any wrongdoing or any violation of state or federal law as alleged in the Class/Collective Actions. Nothing contained in this Agreement shall be construed as an admission of any liability or concession as to the merits of any claim by any Party, and all Parties agree not to offer this Agreement as evidence or otherwise use it in any judicial or administrative proceeding, except that this Agreement may be introduced in any proceeding for the sole purpose of enforcing its terms.

### 2. Approval of Settlement

(a) All terms of this Agreement are contingent upon the approval of the Parties' settlement and certification by the Court of the FLSA Collective, National Class, and State Law Subclasses (as those terms are defined in Section 3 below) for settlement purposes only.

(b) Preliminary Approval

    (i) For purposes of this Agreement, "Preliminary Approval" shall be deemed to occur upon the issuance of a Court order (the "Preliminary Approval Order") that (1) for purposes of providing notice to the affected individuals as described in Section 11, conditionally certifies the FLSA Collective pursuant to Section 216(b); (2) preliminarily certifies the National Class and State Law Subclasses pursuant to Fed. R. Civ. Pro. 23, as specified in Section 3; (3) approves the Parties' choice of Settlement Administrator; and (4) enjoins any pending action filed in any court that is not transferred to the Southern District of New York that asserts any FLSA claim and/or any state law wage and hour or any penalty claims arising under state law relating to the Kronos Outage against any Defendant from proceeding during the pendency of this

Court's approval process. The Preliminary Approval Order shall also, among other things, require any requests for exclusion from members of the National Class and the State Law Subclasses (as defined in Section 3(c)) or objections to the Settlement to be postmarked or received no later than twenty-one (21) days prior to the final approval hearing.

(ii) The Parties' proposed Preliminary Approval Order is attached as Exhibit B hereto.

(iii) Plaintiffs will file their motion for entry of the Preliminary Approval Order ("Preliminary Approval Motion") within seven (7) business days following the execution of this Agreement by all Parties.

(iv) In conjunction with the filing of the Preliminary Approval Motion, the Parties will jointly request that the Court hold a fairness hearing regarding the Parties' request for final approval of their proposed settlement not less than one hundred (100) days after the filing of the Preliminary Approval Motion.

(v) The Parties agree that if the Court requires any material changes in this Agreement before it will grant Preliminary Approval, then this Agreement may be voided at either Party's option.

(c) <u>Final Approval</u>

(i) If the Court grants an order ("Final Approval Order") fully, finally, and unconditionally (1) granting the Parties' motion for approval of their settlement, (2) finally certifying for settlement purposes the FLSA Collective and the National Class and State Law Subclasses (as defined in Section 3(c)); (3) extinguishing FLSA claims and state law claims against the Released Parties as specified in Sections 16 (a) and 16(b); (4) permanently enjoining any other pending actions that are not transferred to the Southern District of New York asserting FLSA and/or state law wage and hour or penalty claims against any Defendants from proceeding excepting any claims by individuals who opt-out of the Settlement; and (5) dismissing the Class/Collective Actions with prejudice, then the "Effective Date" shall be deemed to occur (A) thirty-five (35) days after the issuance of such order, if no appeal of said order is filed within that 35-day period, or (B) upon the final disposition of any appeal that has the effect of affirming the order in its entirety.

(ii) The Parties shall agree on a proposed Final Approval Order no later than ten (10) days prior to a motion by Plaintiffs for final approval.

(d) The Parties agree to cooperate and take all steps necessary and appropriate to obtain a Preliminary Approval Order and Final Approval Order, and otherwise

effectuate all aspects of this Agreement.

**3.** <u>**Stipulation to Certification of the FLSA Collective and Settlement Classes**</u>

(a) The Parties hereby stipulate for settlement purposes only to:

   (i) the certification of the FLSA Collective, the National Class (under Federal Rule 23) and the State Law Subclasses (also under Federal Rule 23) described in subsection 3(c);

   (ii) the appointment of Plaintiffs as class representatives of the National Class;

   (iii) the appointment of Plaintiffs Ricardo Vidaud, Moises Madriz, Rodney Ulloa, and Jorge Mendoza as class representatives of the California State Law Subclass;

   (iv) the appointment of Plaintiffs Matthew White and Thomas Parrish as class representatives of the New York State Law Subclass; and

   (v) the appointment of the undersigned Plaintiffs' Counsel as Class Counsel.

(b) In so stipulating, Defendants do not waive, and instead expressly reserve, their right to challenge the propriety of certification of any FLSA collective or Rule 23 class in the event the settlement described in this Agreement is not approved by the Court or the Effective Date does not occur. The Parties further agree that, other than to effectuate the Settlement of this Action in this jurisdiction, the certification of the FLSA Collective and Settlement Classes for settlement purposes and all documents related thereto, including this Agreement and all accompanying exhibits and all orders entered by the Court in connection with this Agreement, shall not be admissible in any judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or other proceeding, including without limitation any wage and hour litigation against any of the Released Parties.

(c) The Settlement FLSA Collective and Federal Rule 23 State Law Classes and subclasses are defined as follows:

   (i) The FLSA Collective and the National Class (together, the "FLSA Collective/National Class") consists of:

   All current and former employees of Defendants in the United States during the seventeen weekly pay periods between December 5, 2021, and April 8, 2022, who were impacted by the Kronos Outage. For purposes of this Agreement, an employee was impacted by the Kronos Outage if that employee received an inaccurate pay stub or inaccurate compensation at

any time during the Class Period, regardless of whether that employee's compensation paid during the Kronos Outage as compared to compensation owed for the Kronos Outage timeperiod resulted in a net positive (overpayment), net neutral, or net negative (underpayment) to that employee.

(ii) The Federal Rule 23 California State Law Subclass (the "California State Law Subclass") consists of:

All current and former employees of Defendants in California during the seventeen weekly pay periods between December 5, 2021, and April 8, 2022, who were impacted by the Kronos Outage. For purposes of this Agreement, an employee was impacted by the Kronos Outage if that employee received an inaccurate pay stub or inaccurate compensation at any time during the Class Period, regardless of whether that employee's compensation paid during the Kronos Outage as compared to compensation owed for the Kronos Outage timeperiod resulted in a net positive (overpayment), net neutral, or net negative (underpayment) to that employee.

(iii) The Federal Rule 23 New York State Law Subclass (the "New York State Law Subclass" consists of:

All current and former employees of Defendants in New York during the seventeen pay periods between December 5, 2021, and April 8, 2022, who were impacted by the Kronos Outage. For purposes of this Agreement, an employee was impacted by the Kronos Outage if that employee received an inaccurate pay stub or inaccurate compensation at any time during the Class Period, regardless of whether that employee's compensation paid during the Kronos Outage as compared to compensation owed for the Kronos Outage timeperiod resulted in a net positive (overpayment), net neutral, or net negative (underpayment) to that employee.

The California State Law Subclass and the New York State Law Subclass together are referred to as the "State Law Subclasses."

(d) This Settlement is contingent upon certification of the FLSA Collective, National Class, and State Law Subclasses by the Court as defined herein. If any of the classes as defined in this section are not certified, and/or are limited or modified in any way, then this Settlement Agreement may be voided at either Party's option.

**4.** **Amendment to the Complaint and Transfer of the Class/Collective Actions**

(a) To the extent not already undertaken, no later than three (3) business days after

the execution of this Agreement, Plaintiffs shall file in each of their respective Class/Collective Actions a motion pursuant to 28 U.S.C. §§ 1404 and Rule 42 of the Federal Rules of Civil Procedure to transfer to the Southern District of New York and consolidate each such Class/Collective Actions together with *Stevens Action* (the "Transfer Motions"). Defendants in each Class/Collective Actions will consent, for Settlement purposes only, to each of the Transfer Motions. Each Transfer Motion will include a proposed order granting the transfer and consolidation with *Stevens Action* stating, *inter alia,* that (i) transfer and consolidation is requested and granted only for purposes of facilitating this Settlement; and (ii) if for any reason, the Effective Date does not occur, the Parties agree that the Plaintiffs may file motions requesting that the *Stevens Action* Court return the Class/Collective Actions to the respective Transferor Courts.

(b)     Within three (3) business days after the consolidation of all the transferred cases with *Stevens Action*, Plaintiffs shall file a Consolidated Amended Complaint in *Stevens Action* pursuant to Fed. R. Civ. P. 15(a)(2), which shall allege claims on behalf of all employees of Defendants impacted by the Kronos Outage, including all relevant FLSA and state law claims. The Consolidated Amended Complaint is attached as Exhibit C, hereto. Defendants in no way endorse, admit, or agree to any of the allegations contained within the Consolidated Amended Complaint.

(c)     The Parties hereby stipulate and agree that Defendants shall not be required to serve or file a responsive pleading in response to the Consolidated Amended Complaint. If, for any reason, (i) the Court does not enter the Preliminary Approval Order, (ii) the Court does not enter the Final Approval Order; or (iii) the Effective Date does not occur, Plaintiffs shall withdraw the Consolidated Amended Complaint without prejudice. In the event that Plaintiffs withdraw the Consolidated Amended Complaint pursuant to this paragraph, no Party shall argue that Defendants' consent to the filing of the Consolidated Amended Complaint or Plaintiffs' withdrawal of the Consolidated Amended Complaint has any bearing on the merits of any subsequent motion or effort to amend or dismiss the operative complaints in the Class/Collective Action.

5.     **Settlement Payment**

(a)     On May 6, 2022, in order to provide recompense most expeditiously to the impacted employees, Defendants made payments of approximately $23,896,550.00 representing, pursuant to analysis undertaken by Defendants in conjunction with third-party consultant Ernst & Young and which has been shared with Plaintiffs' Counsel, the net unpaid compensation owed to the members of the FLSA Collective/National Class due to the Kronos Outage (the "May 6 Payment"). Defendants have agreed not to recoup from employees approximately $59,776,602 in overpayments Defendants made to the members of the FLSA Collective/National Class during the period of the Kronos Outage.

(b)     Within fourteen (14) days after the entry of a Final Approval Order and the Settlement Administrator providing to Defendants' Counsel complete wiring directions for the Escrow Account, Defendants shall cause their respective portions of the total $12,750,000.00 (the "Settlement Payment") to be wired into an interest-bearing escrow account designated by

Plaintiffs, to be under the control of the Settlement Administrator and designated as a Qualified Settlement Fund pursuant to the Internal Revenue Code (the "Escrow Account") to be held in escrow pending the Effective Date, after which Defendants shall have no further interest in the Settlement Amount, except as set forth in subsection 5(e) below. This Settlement Payment represents a negotiated amount for the liquidated damages available under the FLSA and the liquidated damages and penalties available under all applicable State laws and for payment of all legal fees, expenses and service payments sought by Plaintiffs' counsel.

(c)     Together, the May 6 Payment plus the Settlement Payment Amount shall constitute the Common Fund Amount.

(d)     The Settlement Payment Amount, less any amounts awarded by the Court for Plaintiffs' Counsel's attorneys' fees and costs and for Service Payments to the Named Plaintiffs, and less the payment set forth in Section 15 below to the California Labor and Workforce Development Agency ("LWDA") as the funds owed to it under the California Private Attorneys General Act ("PAGA"), shall be referred to as the "Net Settlement Fund."

(e)     Should a Final Approval Order entered by the District Court be set aside by an appellate court, then the principal and interest in the Escrow Account (the amount deposited plus interest less any notice and administration costs that have been incurred) shall be returned to Defendants within five (5) business days of the date of entry of the appellate court's opinion that such Final Approval Order entered by the District Court be set aside, unless otherwise agreed in writing by the Parties.

(f)     Notwithstanding the preceding paragraph, all funds specified in Section 5(b) shall remain in the Escrow Account pending the disposition of any appeal of any Final Approval Order.

## 6.     The Reconciliation Process Concerning the May 6 Payment

(a)     The Parties have agreed that the recipients of a May 6 Payment, who are all members of the FLSA Collective/National Class, will have an opportunity to have any dispute concerning the accuracy of the amount they received resolved by a neutral party.

(b)     Each such employee will receive upon request a reconciliation statement showing the amount of Kronos-processed compensation owed to that employee during the Kronos Outage compared to the amount paid to the employee during the Kronos Outage by Defendants, and any net over/underpayment to the employee. Employees will be able to initially dispute their reconciliation statement by contacting their manager, contacting a human resources representative, or calling a toll-free phone number dedicated to supporting questions regarding the reconciliation statements. In the event a recipient believes there is an underpayment greater than the amount shown on the employee's reconciliation statement, Defendants have agreed to use their best efforts to provide available payroll/timekeeping records for the individual employee to confirm/challenge the amount of their payment upon request. The reconciliation process will allow individual FLSA Collective/National Class members up to 90 days from the Court's preliminary approval of the Settlement in which to present any challenge and the

Settlement Notice shall inform FLSA Collective/National Class members that Plaintiffs' Counsel are available to aid them should they have questions or concerns about the amount of their payment, or, specifically, wish to challenge it. Should a Defendant and any FLSA Collective/National Class member fail to agree upon an amount of their underpayment through the reconciliation process described herein, the Parties have agreed to have such disputes with respect to their reconciliation statements be resolved by a neutral acceptable to both the class member and the applicable Defendant. Given the foregoing and the ability of all FLSA Collective/National Class members to resolve any claims with respect to the reconciliation by the aforementioned neutral, any FLSA Collective/National Class member who does not opt out of the National Class or State Law Subclasses (as defined in section 3(c) above) shall release his, her, or their claims, including without limitation any claim relating to the reconciliation statement, in accordance with Section 16(b).

7. **Confirmatory Discovery**

(a) The Parties agree that Plaintiffs shall be able to take reasonable confirmatory discovery as to, among other topics, (1) Defendants' use of Kronos and consideration of back-up systems, (2) what was done by Defendants when the Kronos Outage occurred; (3) the use of Kronos by all the Defendants and whether the response to the Kronos Outage differed between Defendants; (4) how Defendants paid employees during the Kronos Outage period and how that was determined, including any overpayments; (5) which pay periods were impacted by the Kronos Outage; and (6) how Ernst & Young did its analysis.

(b) In the event that such confirmatory discovery causes Plaintiffs to believe that the facts and circumstances relative to the claims asserted in the Consolidated and Amended Complaint are materially different than those which have been represented to them during the course of the settlement negotiations, the Parties agree that they shall consult between themselves as to their materiality and whether additional steps or amendment to the terms of this Settlement Agreement and the proposed Settlement are required. In the event that the Parties cannot agree to appropriate steps between themselves, they agree to use Martin Scheinman, Esq. to mediate the dispute.

8. **Attorneys' Fees and Costs**

(a) Plaintiffs' Counsel may petition the Court for an award of attorneys' fees and costs in conjunction with the Parties' settlement. Any such petition shall be filed no later than ten (10) days prior to the date of the final approval hearing.

(b) Any attorneys' fees and costs awarded to Plaintiffs' Counsel in conjunction with the Parties' settlement shall be paid from the Settlement Payment Amount and shall reduce the Settlement funds available to pay the members of the FLSA Collective/National Class, the California State Law Subclass and the New York State Law Subclass. Defendants will not oppose any request by Plaintiffs' Counsel for an award of attorneys' fees and costs that, in total, does not exceed twenty percent (20%) of the Common Fund Amount.

(c) The Settlement is not conditioned upon the Court's approval of Plaintiffs'

Counsels' application for attorneys' fees and expenses. To the extent that such application for attorneys' fees and expenses is not approved by the Court, in whole or in part, the amounts of the application not approved by the Court shall be allocated for the benefit of the members of the FLSA Collective/National Class and the State Law Subclasses.

(d)  The amount awarded by the Court for Plaintiffs' Counsel's attorneys' fees and expenses may be paid to Plaintiffs' Counsel from the Escrow Account five (5) business days following the Effective Date.

## 9.  <u>Service Payments to Named Plaintiffs</u>

(a)  Plaintiffs' Counsel may also petition for an award of service payments to plaintiff Stevens and the named plaintiffs in each of the Class/Collective Actions as well as to Starr Montgomery who agrees to a stay of the action captioned *Starr Montgomery v. Frito-Lay, Inc.*, C.A. No. 3:22-cv-185 (N.D.Tex). Any such petition shall be filed no later than ten (10) days prior to the date of the final approval hearing.

(b)  Any service payments awarded shall be paid from the Settlement Payment Amount and shall reduce the Settlement Funds available to pay the members of the FLSA Collective/National Class, and shall be in addition to payments that those Plaintiffs shall receive as a member of the FLSA Collective/National Class and State Law Subclasses pursuant to Section 15. Any such service payments awarded by the Court shall be distributed by the Settlement Administrator in separate checks mailed contemporaneously with the mailing of checks pursuant to Section 15 and shall be reported to state and federal taxing authorities as non-wage income on IRS Form 1099. Defendants will not oppose any request by Plaintiffs' Counsel for service payments to the Plaintiffs of up to $5,000 for each Plaintiff.

(c)  The Settlement is not conditioned upon the Court's approval of the foregoing amounts of Service Payments. To the extent that such application for Service Payments is not approved by the Court, in whole or in part, the amounts of the application not approved by the Court shall be allocated for the benefit of the members of the FLSA Collective/National Class and State Law Subclasses.

## 10.  <u>Settlement Administrator</u>

(a)  Plaintiffs and Defendants shall mutually agree on, after a bid process, a settlement administrator to serve as the administrator of the settlement and perform services, including, without limitation, dissemination of notices of this settlement to the members of the FLSA Collective/National Class and State Law Subclasses and to governmental authorities as required by law, processing of requests for exclusion, calculation of payments due, distribution of checks payable from the Net Settlement Fund to all members of the FLSA Collective/National Class and State Law Subclasses unless they have submitted a timely request for exclusion, paying the LWDA the funds owed to it under PAGA, periodic reporting of checks that have been cashed to Plaintiffs' Counsel, tax reporting on IRS Form 1099 for each cashed check, and conducting a second distribution of funds remaining due to uncashed checks, as well as other activities attendant upon effectuating the Settlement.

(b)    The costs of administering the Parties' settlement, including the fees and costs of the Settlement Administrator, shall be paid by Defendants.

**11.**    <u>Notices Mandated by Statute</u>

(a)    No later than ten (10) days after the filing of the Preliminary Approval Motion, the Parties will instruct the Settlement Administrator to mail notices of the Parties' proposed settlement to an "Appropriate Federal Official" and "Appropriate State Officials" (collectively, "Government Officials") as required by 28 U.S.C. § 1715.

(b)    The Settlement Administrator shall prepare the notices referenced in the preceding subsection, which shall include the Preliminary Approval Motion, this Agreement, and all exhibits thereto. Such mailings shall also include information regarding the portion of the Net Settlement Fund that the Parties anticipate would be distributed to individuals living in each state following the Effective Date.

**12.**    <u>Notice to Members of the FLSA Collective and the National Class of the Settlement</u>

(a)    Defendants shall provide the Settlement Administrator with a list, in electronic form, of all members of the FLSA Collective/National Class, their employee GPID numbers, each of their last known addresses and email addresses (if known), as well as the State in which they worked for Defendants, if different (the "Class/Collective List"), within ten (10) days of the entry of the Preliminary Approval Order, which will approve the Parties' choice of Settlement Administrator.

(b)    A copy of the Class/Collective List will also be provided to Plaintiffs' Counsel. The Class/Collective shall be maintained as confidential and will only be used by Plaintiffs' Counsel to discharge their obligations as class counsel, *i.e.*, for purposes directly related to this Settlement Agreement. The Class/Collective List will be provided and then maintained by Plaintiffs' Counsel in an encrypted form (*i.e.* password protected). Within one hundred twenty (120) days of the Effective Date, Plaintiffs' Counsel will destroy the Class/Collective List and any copies made thereof. Nothing in this paragraph shall be construed to preclude the Settlement Administrator and Plaintiffs' Counsel from communicating with each other regarding information contained in the Class/Collective List or any FLSA Collective/National Class member during the administration of the settlement.

(c)    Within twenty-one (21) days after the Court grants Preliminary Approval of the Parties' proposed settlement, the Parties shall instruct the Settlement Administrator to mail the Notice of Settlement in substantially the form attached hereto as Exhibit D to the persons identified on the Class/Collective List (the "Notice"). The Settlement Administrator shall send the Notice by email (if an email address is indicated on the Class/Collective List, and, if not, by First Class U.S. Mail to each person identified on the Class/Collective List. For any returned Notices, the Settlement Administrator shall conduct reasonable address verification efforts consistent with the customary practices in the settlement administration industry.

11

### 13. Requests for Exclusion and Objections

(a)     Any member of the National Class or State Law Subclasses wishing to be excluded from the Settlement, *i.e.*, opt-out of the Settlement, shall submit, via First Class Mail, postage prepaid, an "Opt-Out Request" to the Settlement Administrator, postmarked by forty-five (45) days after the mailing of the Notice (the "Response Deadline"). The postmark date on the Opt-Out Request will be the exclusive means to determine whether the Opt-Out Request has been timely submitted. Any such Opt-Out Request shall be in writing and state the full name of the individual seeking to be excluded and include the employee's current address, work location, and signature and expressly request exclusion from the Settlement. Any National Class Member who requests exclusion from the Settlement will not be entitled to receive a payment from the Net Settlement Fund and will not be bound by the Settlement Agreement or any releases that become effective in this Action and will not have any right to object to or appeal any order related to the Settlement. If a National Class Member both opts-out and objects to the Settlement, the objection will be deemed invalid.

(b)     No later than five business days after the Response Deadline, the Settlement Administrator will provide the Parties with a list of all National Class Members and members of the State Law Subclasses who have submitted Opt-Out Requests as well as its determination whether such requests are timely and valid.

(c)     Any member of the National Class or State Law Subclasses who does not affirmatively opt-out of the Settlement by submitting a timely and valid Opt-Out request will be bound by the Settlement's terms, including those pertaining to the applicable Release, as well as by any Judgment that may be entered by the Court if it grants final approval of the Settlement.

(d)     Any member of the National Class wishing to object to the Settlement, or any part thereof, shall submit an objection postmarked by the Response Deadline.

      (i)     To be considered, an objection must be in writing and be sent to the Plaintiffs' Counsel and Defense Counsel identified in section 22 and to the Clerk of the Court via First-Class United States mail, postage prepaid, received or postmarked by the Response Deadline. The objection must be signed by the National Class Member and include his, her, or their name, current mailing and email addresses, and phone numbers, and state all grounds for the objection. If the objector is represented by counsel, the written objection must state so and provide the name and address of the counsel. If the objector intends to appear at the Final Approval hearing by himself, herself, or theirself or by counsel, the written objection must also so state whether the objector or his, her, or their attorney is making an appearance.

      (ii)     If not already filed by the objector, Plaintiffs shall file any such objection with the Clerk of Court within three business days of receipt.

      (iii)     An objector has the right to appear at the Fairness Hearing either in

person or through counsel hired by the objector, but is under no obligation to do so. An objector who wishes to appear at the Fairness Hearing must state his, her, or their intention to do so at time he/she/they submits his/her/their written objections. An objector may withdraw his/her/their objections at any time. Any National Class Member or State Law Subclass member who has submitted an Opt-Out Request may not submit an objection to the Settlement. Any individual who does not timely make their objections in this manner will be deemed to have waived all objections and shall not be heard or have the right to appeal approval of the Settlement.

(iv)    Any written response to any filed objections must be filed with the Court at the time set by the Court for the filing of Plaintiff's Motion for Final Approval.

## 14.   Calculation of Individual Awards

(a)    Each individual National Class member and State Law Subclass member will receive an amount representing their pro-rata share of each applicable settlement group depending on the amount to which the individual is entitled as compared to the amount to which all individuals in that group will be entitled (the "Claim Amount"). The settlement groups are described in the chart attached as Exhibit E hereto, and are as follows:

(i)    Group 1: FLSA Collective and National Class Members who were net underpaid by at least $1;

(ii)    Group 2: FLSA Collective and National Class Members who were net overpaid, net neutral, or net underpaid by less than $1 and received inaccurate wage statements;

(iii)    Group 3: California State Law Subclass Members;

(iv)    Group 4: New York State Law Subclass Members.

Members of the groups described in (i) or (ii) who are also members of either the California State Law or New York State Law Subclasses will receive recoveries from both of the groups that are applicable to them. The Average Recovery (as shown on Exhibit E) does not reflect how much each individual will be allocated from each group. The individual recovery amount will be determined on a pro-rata or per-person basis as indicated in Exhibit E. Members of Group 2, which consists of class members who were net overpaid, net neutral, or net underpaid by less than $1, will each receive $25.00 and members of Groups 3 and 4 who were exclusively overpaid during the Kronos Outage will each receive $25.00.

13

## 15.   Payments to Class Members and to the LWDA

(a)     Within thirty (30) days following the Effective Date, the Settlement Administrator shall begin distribution by mailing checks to each member of the National Class who has not submitted a timely and valid request for exclusion ("Eligible Claimant") and to the LWDA.

(b)     The checks mailed to National Class members shall contain, in plain English, a clear statement that if the class member cashes their check, they will be releasing the Released Claims described in Section 16(a) below.

(c)     Checks issued pursuant to the preceding paragraph shall expire ninety (90) days after they are issued, but a failure by any Eligible Claimant to deposit or cash a check within the time period allotted shall have no effect on that individual's release of Released Claims pursuant to Section 16(b), which pertains solely to a release of State Law Claims. The Settlement Administrator will mail a reminder postcard to all Eligible Claimants who have not cashed their check within thrity (30) days of mailing the check. Forty-five (45) days after mailing the checks, for any Eligible Claimant who has not cashed their check, the Settlement Administrator will attempt to confirm the accuracy of their address and, if practiable for the amount of the check, perform a first-stage skip trace and re-send the settlement check to any updated address. Subject to good cause shown by the Eligible Claimant, the Settlement Administrator may reissue a check for up to an additional ninety (90) days following the original ninety-day period. The Parties will confer in good faith to determine whether good cause has been shown. Any disputes shall be resolved pursuant to the resolution provisions set forth in Section 19.

(d)     The Parties agree that the payments made from the Net Settlement Fund are intended to be non-wages income to each Eligible Claimant and agree that the amount paid to each Eligible Claimant who cashes their check shall be reported on a Form 1099 for tax purposes.

(e)     The payment of any amount as provided herein to Eligible Claimants shall have no impact on their entitlement to or receipt of any benefits under any Defendants' welfare or benefit plan; or, as allowable by law, to their entitlement or receipt of workers compensation benefits or unemployment compensation.

(f)     Any portion of the Net Settlement Amount that is unclaimed by members of the Settlement Classes shall be redistributed to the Settlement Class on a *pro rata* basis if economically practicable. If not economically practicable, any funds not disbursed as a result of an uncashed check shall be tendered by the Settlement Administrator as *cy pres* to the National Employment Law Project. The Parties represent that they do not have a significant prior affiliation with the recipient that could create a conflict of interest.

(g)     A total of Thirty Thousand Dollars ($30,000.00) shall be allocated to the California Labor Code § 2699 claim for civil penalties.  75% of said amount ($22,500) shall be paid by the Settlement Administrator, within five days of the Effective Date, by check payable to the LWDA for penalties under PAGA, and 25% of said amount ($7,500) shall remain a part of the Net Settlement Fund for distribution to Eligible Claimants as provided in this Section.

16. **Releases**

    (a)    Upon the Effective Date, all individuals who cash the checks sent to them by the Settlement Administrator ("Releasing FLSA Claim Collective Members") shall be deemed to fully, forever, irrevocably and unconditionally release, remise, and discharge Defendants (collectively referred to as the "Released Parties"), from any and all claims under the FLSA relating to or arising out the Kronos Outage, including, without limitations, all FLSA claims for unpaid wages (whether minimum wage or overtime), failure to timely pay wages, failure to record hours worked, paystub requirements, reimbursement, and all related claims for statutory damages or penalties, interest, liquidated damages, attorneys' fees, costs, expenses, and all other such amounts. This release shall be conspicuously included on the checks issued by the Settlement Administrator.

    (b)    Upon the Effective Date, Plaintiffs and all members of the National Class including the State Law Subclasses who do not submit a timely and valid request for exclusion from this Action ("Releasing State Law Claim Class Members") shall be deemed to fully, forever, irrevocably and unconditionally release, remise, and discharge the Released Parties from any and all claims under state laws relating to or arising out of the Kronos Outage, including, without limitations, all state and local claims for unpaid wages (including but not limited to minimum wage or overtime), failure to timely pay wages, failure to record hours worked, paystub requirements, reimbursement, and all related claims for statutory damages or penalties, interest, liquidated damages, attorneys' fees, costs, expenses, and all other such amounts.

    (c)    The releases described in Subsections 16(a) are referred to as the "Released Federal Claims" and the releases described in Subsection 16(b) above are referred to as the "Released State Law Claims."

    (d)    In exchange for good and valuable consideration set forth herein, with respect to the release set forth in 16(b), Plaintiffs stipulate and agree that, upon the Effective Date, Plaintiffs shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:

        A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASING PARTY.

Plaintiffs may hereafter discover facts in addition to or different from those he/she/they now knows or believe to be true with respect to the subject matter of the release in section 16(b), but Plaintiffs, upon the Effective Date, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever settled and released any and all of the claims

released pursuant to the release in section 16(b), whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.

### 17. Dismissal of Action

The Final Approval Order shall provide that upon the Effective Date, the Class/Collective Actions shall be dismissed with prejudice and without costs (except as otherwise provided herein) with the Court retaining jurisdiction over the case for purposes of the completion of the administration of this Settlement, ensuring compliance with the terms of this Settlement Agreement and any order of the Court issued in connection therewith.

### 18. No Publicity

Plaintiffs and Defendants agree not to disclose or publicize non-public information related to the settlement, except to potential class members and as contractually required to effectuate the terms of the settlement as set forth herein. For the avoidance of doubt, this section means Plaintiffs and Defendants will not issue press releases, communicate with, or respond to any media or publication entities, publish information in any manner or form, whether printed or electronic, on any medium, or otherwise communicate, whether by print, video, recording, or any other medium, with any person or entity concerning the settlement, insofar as such information is not publicly available including the negotiations underlying the settlement, except as shall be contractually required to effectuate the terms of the settlement as set forth herein. However, for the limited purpose of allowing Plaintiffs to prove adequacy of Plaintiffs' Counsel as class counsel in other actions, Plaintiffs may disclose the names of the Parties in this action and the venue/case number of this action (but not any other settlement details) for such purposes.

Nothing in this section shall prohibit Plaintiffs from disclosing details of the settlement to any of their spouses, tax advisors, or attorneys, provided that they are also advised of the duty to keep the information confidential.

Nothing in this paragraph shall prevent Defendants from making necessary disclosures to their accountants, tax preparers and advisors, auditors, attorneys, insurance carriers (or prospective insurance carriers), financial regulators, a court, or to other third parties as required by law, regulation, or court order, including any reporting obligations to shareholders or government agencies under any federal or state law. Likewise, nothing in this paragraph shall prevent Defendants from disclosing the terms of the settlement to any of their board members, executives, or other employees or contractors who need access to the information for Defendants' business or legal operations.

The Parties shall inform their repective counsel of the contents of this paragraph and shall instruct them to abide by its provisions.

16

19. **Complete Agreement**

Other than as stated herein, the Parties warrant that no representation, promise, or inducement has been offered or made to induce any Party to enter into this Agreement and that they are competent to execute this Agreement and accept full responsibility therefore. This Agreement contains and constitutes the entire understanding and agreement between the Parties and supersedes all previous oral and written negotiations, agreements, commitments, and writings in connection therewith. This Agreement may not be amended or modified except by a writing signed by authorized representatives of all Parties.

20. **Dispute Resolution**

The Parties agree to meet and confer in good faith to resolve any disagreements over the implementation of the terms of this Agreement or any other documents necessary to effectuate the Settlement. If the meet and confer is not successful, the Parties agree to bring their dispute before Martin Scheinman, Esq., for his assistance in reaching a resolution.

21. **Knowing and Voluntary Agreement**

The Parties agree that they are entering into this Agreement knowingly, voluntarily, and with full knowledge of its significance. Each Party further affirms that she/he/they has/have not been coerced, threatened, or intimidated into signing this Agreement; that she/he/they has/have been advised to consult with an attorney; and that each of them in fact has consulted with an attorney before signing this Agreement. Plaintiffs represent that they have conducted a thorough investigation into the facts of the Class/Collective Actions and have diligently pursued an investigation of the claims asserted on behalf of members of the National Class and State Law Subclasses against Defendants. Based on their own independent investigation, analysis of information provided by Defendants, and the extensive mediation which led to this settlement, Plaintiffs are of the opinion that the settlement with Defendants is fair, reasonable, and adequate, and is in the best interest of the members of the FLSA Collective/National Class and State Law Subclasses, in light of all known facts and circumstances, including the risks of significant delay and defenses asserted by Defendants.

22. **Notices**

Any notices issued pursuant to the terms of this Agreement shall be sent to the Parties at the addresses of their respective counsel as follows:

For Plaintiffs to:

Seth R. Lesser
KLAFTER LESSER LLP
2 International Drive
Suite 350
Rye Brook, NY 10573

For PepsiCo to:

Alison R. Ashmore
Dykema Gossett LLP
1717 Main Street, Suite 4200
Dallas, TX 75228

17

For New Tiger to:

Alexander Chemers
Ogletree Deakins
400 South Hope Street
Los Angeles, CA 90071

### 23. Authority

Each signatory to this Agreement represents that they are duly authorized to sign for the party or parties they purport to represent.

### 24. Severability

If any party of this Agreement is found to be illegal, invalid, inoperative or unenforceable in law or equity, such finding shall not affect the validity of any other provisions of this Agreement, which shall be construed, reformed and enforced to effect the purposes thereof to the fullest extent permitted by law. If one or more of the provisions contained in the Agreement shall for any reason be held to be excessively broad in scope, subject matter or otherwise, so as to be unenforceable at law, the Parties agree that such provision(s) shall be construed to be limited or reduced so as to be enforceable to the maximum extent under the applicable law.

### 25. Governing Law

This Agreement shall be governed by New York law, without regard to that state's choice of law provisions or any other jurisdiction, and, when applicable, the laws of the United States, irrespective of where any action may arise or whether any jurisdiction other than New York has accepted jurisdiction of this matter. The Parties also hereby submit to the jurisdiction of the Court for all purposes relating to the review, approval, and enforcement of the terms of this Agreement.

### 26. Binding on Successors and Assigns

This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, issue, next-of-kin, executors, administrators, successors, and assigns.

### 27. Counterparts

This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and when taken together with other signer counterparts, shall constitute one Agreement, which shall be binding upon and effective as to the Parties.

### 28. Headings

The headings used in this Agreement are for convenient reference only, and do not alter or limit the terms of each Section.

**IN WITNESS WHEREOF,** the Parties each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

**Plaintiffs:**

_____

Emanuele Stevens

_____

Devin Dobsch

_____

Tracy Ellis

_____

Robney Irving-Millentree

_____

Tyrell King

_____

Moises Madriz

_____

Seth Marshall

_____

Kennetha Mitchell

_____

Thomas Parrish

_____

Allison Poulson

_____

Joshua Smith

**Plaintiffs' Counsel:**

PARMET PC

_____

Matthew S. Parmet
PARMET PC
3 Riverway, Ste. 1910
Houston, TX 77056
T: 713-999-5228
Email: matt@parmet.law

KLAFTER LESSER LLP

_____

Seth R. Lesser
Jeffrey A. Klafter
KLAFTER LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
T: 914-934-9200
Email: seth@klafterlesser.com
       jak@klafterlesser.com

SCOTT & WINTERS LAW FIRM, LLC

_____

Joseph F. Scott
Ryan A. Winters
Kevin M. McDermott II
SCOTT & WINTERS LAW FIRM, LLC
The Caxton Building
812 Huron Rd. E., Ste. 490
Cleveland, OH 44115
T: 216-912-2221
Email: jscott@ohiowagelawyers.com
       rwinters@ohiowagelawyers.com
       kmcdermott@ohiowagelawyers.com

**Plaintiffs:**

Emanuele Stevens
Emanuele Stevens (Jul 12, 2022 10:33 EDT)

**Emanuele Stevens**

Devin Dobsch

Tracy Ellis

Robney Irving-Millentree

Tyrell King

Moises Madriz

Seth Marshall

Kennetha Mitchell

Thomas Parrish

Allison Poulson

Joshua Smith

**Plaintiffs' Counsel:**

PARMET PC

Matthew S. Parmet
PARMET PC
3 Riverway, Ste. 1910
Houston, TX 77056
T: 713-999-5228
Email: matt@parmet.law

KLAFTER LESSER LLP

Seth R. Lesser
Jeffrey A. Klafter
KLAFTER LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
T: 914-934-9200
Email: seth@klafterlesser.com
        jak@klafterlesser.com

SCOTT & WINTERS LAW FIRM, LLC

Ryan Winters
Ryan Winters (Jul 12, 2022 10:35 EDT)

Joseph F. Scott
Ryan A. Winters
Kevin M. McDermott II
SCOTT & WINTERS LAW FIRM, LLC
The Caxton Building
812 Huron Rd. E., Ste. 490
Cleveland, OH 44115
T: 216-912-2221
Email: jscott@ohiowagelawyers.com
        rwinters@ohiowagelawyers.com
        kmcdermott@ohiowagelawyers.com

20

DocuSign Envelope ID: 51F88E13-11FC-4C72-9A5F-FF07D2705FE9

**Plaintiffs:**

_____

Emanuele Stevens

_____

Devin Dobseh

_____

Tracy Ellis

_____

Robney Irving-Millentree

_____

Tyrell King

_____

Moises Madriz

_____

Seth Marshall

_____

Kennetha Mitchell

_____

Thomas Parrish

_____

Allison Poulson

_____

Joshua Smith

**Plaintiffs' Counsel:**

PARMET PC

_____

Matthew S. Parmet
PARMET PC
3 Riverway, Ste. 1910
Houston, TX 77056
T: 713-999-5228
Email: matt@parmet.law

KLAFTER LESSER LLP

_____

Seth R. Lesser
Jeffrey A. Klafter
KLAFTER LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
T: 914-934-9200
Email: seth@klafterlesser.com
      jak@klafterlesser.com

SCOTT & WINTERS LAW FIRM, LLC

_____

Joseph F. Scott
Ryan A. Winters
Kevin M. McDermott II
SCOTT & WINTERS LAW FIRM, LLC
The Caxton Building
812 Huron Rd. E., Ste. 490
Cleveland, OH 44115
T: 216-912-2221
Email: jscott@ohiowagelawyers.com
      rwinters@ohiowagelawyers.com
      kmcdermott@ohiowagelawyers.com

DocuSign Envelope ID: 36AE2FD3-212D-4D93-8FC5-381E2E7DD3B3

**Plaintiffs:**

**Plaintiffs' Counsel:**

PARMET PC

Emanuele Stevens

_____

Devin Dobsch

Matthew S. Parmet
PARMET PC
3 Riverway, Ste. 1910
Houston, TX 77056
T: 713-999-5228
Email: matt@parmet.law

Tracy Ellis

Robney Irving-Millentree

KLAFTER LESSER LLP

Tyrell King

Seth R. Lesser
Jeffrey A. Klafter
KLAFTER LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
T: 914-934-9200
Email: seth@klafterlesser.com
         jak@klafterlesser.com

Moises Madriz

Seth Marshall

SCOTT & WINTERS LAW FIRM, LLC

Kennetha Mitchell

Joseph F. Scott
Ryan A. Winters
Kevin M. McDermott II
SCOTT & WINTERS LAW FIRM, LLC
The Caxton Building
812 Huron Rd. E., Ste. 490
Cleveland, OH 44115
T: 216-912-2221
Email: jscott@ohiowagelawyers.com
         rwinters@ohiowagelawyers.com
         kmcdermott@ohiowagelawyers.com

Thomas Parrish

Allison Poulson

Joshua Smith

20

DocuSign Envelope ID: 25CEA970-D9CA-4DD8-BB25-63F07CC7FEDD

**Plaintiffs:**

Emanuele Stevens
_____

Devin Dobsch
_____

Tracy Ellis
_____

DocuSigned by:

_Robney Irving-Millentree_
935C09298749ACC...
Robney Irving-Millentree
_____

Tyrell King
_____

Moises Madriz
_____

Seth Marshall
_____

Kennetha Mitchell
_____

Thomas Parrish
_____

Allison Poulson
_____

Joshua Smith
_____

**Plaintiffs' Counsel:**

PARMET PC

_____
Matthew S. Parmet
PARMET PC
3 Riverway, Ste. 1910
Houston, TX 77056
T: 713-999-5228
Email: matt@parmet.law

KLAFTER LESSER LLP

_____
Seth R. Lesser
Jeffrey A. Klafter
KLAFTER LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
T: 914-934-9200
Email: seth@klafterlesser.com
            jak@klafterlesser.com

SCOTT & WINTERS LAW FIRM, LLC

_____
Joseph F. Scott
Ryan A. Winters
Kevin M. McDermott II
SCOTT & WINTERS LAW FIRM, LLC
The Caxton Building
812 Huron Rd. E., Ste. 490
Cleveland, OH 44115
T: 216-912-2221
Email: jscott@ohiowagelawyers.com
            rwinters@ohiowagelawyers.com
            kmcdermott@ohiowagelawyers.com

DocuSign Envelope ID: 58F98E5D-9D17-46F2-BFEA-496F6540190E

| **Plaintiffs:** | **Plaintiffs' Counsel:** |
|---|---|
| | PARMET PC |
| _____ | |
| Emanuele Stevens | _____ |
| | Matthew S. Parmet |
| _____ | PARMET PC |
| Devin Dobsch | 3 Riverway, Ste. 1910 |
| | Houston, TX 77056 |
| | T: 713-999-5228 |
| _____ | Email: matt@parmet.law |
| Tracy Ellis | |
| | KLAFTER LESSER LLP |
| _____ | |
| Robney Irving-Millentree | _____ |
| | Seth R. Lesser |
| Tyrell King | Jeffrey A. Klafter |
| | KLAFTER LESSER LLP |
| | Two International Drive, Suite 350 |
| _____ | Rye Brook, New York 10573 |
| Moises Madriz | T: 914-934-9200 |
| | Email: seth@klafterlesser.com |
| | jak@klafterlesser.com |
| _____ | |
| Seth Marshall | SCOTT & WINTERS LAW FIRM, LLC |
| | |
| _____ | _____ |
| Kennetha Mitchell | Joseph F. Scott |
| | Ryan A. Winters |
| | Kevin M. McDermott II |
| _____ | SCOTT & WINTERS LAW FIRM, LLC |
| Thomas Parrish | The Caxton Building |
| | 812 Huron Rd. E., Ste. 490 |
| | Cleveland, OH 44115 |
| _____ | T: 216-912-2221 |
| Allison Poulson | Email: jscott@ohiowagelawyers.com |
| | rwinters@ohiowagelawyers.com |
| | kmcdermott@ohiowagelawyers.com |
| _____ | |
| Joshua Smith | |

DocuSign Envelope ID: 241D2DDC-F22B-4CDF-B275-4A5270C56326

**Plaintiffs:**

Emanuele Stevens

Devin Dobsch

Tracy Ellis

Robney Irving-Millentree

Tyrell King

Moises Madriz

Seth Marshall

Kennetha Mitchell

Thomas Parrish

Allison Poulson

Joshua Smith

**Plaintiffs' Counsel:**

PARMET PC

Matthew S. Parmet
PARMET PC
3 Riverway, Ste. 1910
Houston, TX 77056
T: 713-999-5228
Email: matt@parmet.law

KLAFTER LESSER LLP

Seth R. Lesser
Jeffrey A. Klafter
KLAFTER LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
T: 914-934-9200
Email: seth@klafterlesser.com
        jak@klafterlesser.com

SCOTT & WINTERS LAW FIRM, LLC

Joseph F. Scott
Ryan A. Winters
Kevin M. McDermott II
SCOTT & WINTERS LAW FIRM, LLC
The Caxton Building
812 Huron Rd. E., Ste. 490
Cleveland, OH 44115
T: 216-912-2221
Email: jscott@ohiowagelawyers.com
        rwinters@ohiowagelawyers.com
        kmcdermott@ohiowagelawyers.com

**Plaintiffs:**

Emanuele Stevens

_____

Devin Dobsch

_____

Tracy Ellis

_____

Robney Irving-Millentree

_____

Tyrell King

_____

Moises Madriz

_____

Seth Marshall (Jul 12, 2022 15:35 EDT)
Seth Marshall

_____

Kennetha Mitchell

_____

Thomas Parrish

_____

Allison Poulson

_____

Joshua Smith

**Plaintiffs' Counsel:**

PARMET PC

_____

Matthew S. Parmet
PARMET PC
3 Riverway, Ste. 1910
Houston, TX 77056
T: 713-999-5228
Email: matt@parmet.law

KLAFTER LESSER LLP

_____

Seth R. Lesser
Jeffrey A. Klafter
KLAFTER LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
T: 914-934-9200
Email: seth@klafterlesser.com
        jak@klafterlesser.com

SCOTT & WINTERS LAW FIRM, LLC

_____

Joseph F. Scott
Ryan A. Winters
Kevin M. McDermott II
SCOTT & WINTERS LAW FIRM, LLC
The Caxton Building
812 Huron Rd. E., Ste. 490
Cleveland, OH 44115
T: 216-912-2221
Email: jscott@ohiowagelawyers.com
        rwinters@ohiowagelawyers.com
        kmcdermott@ohiowagelawyers.com

DocuSign Envelope ID: 716113ED-6072-49F2-9930-A6DDFA195A7C

**Plaintiffs:**

_____
Emanuele Stevens

_____
Devin Dobsch

_____
Tracy Ellis

_____
Robney Irving-Millentree

_____
Tyrell King

_____
Moises Madriz

_____
Seth Marshall

_____
Kennetha Mitchell

_____
Thomas Parrish

_____
Allison Poulson

_____
Joshua Smith

**Plaintiffs' Counsel:**

PARMET PC

_____
Matthew S. Parmet
PARMET PC
3 Riverway, Ste. 1910
Houston, TX 77056
T: 713-999-5228
Email: matt@parmet.law

KLAFTER LESSER LLP

_____
Seth R. Lesser
Jeffrey A. Klafter
KLAFTER LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
T: 914-934-9200
Email: seth@klafterlesser.com
        jak@klafterlesser.com

SCOTT & WINTERS LAW FIRM, LLC

_____
Joseph F. Scott
Ryan A. Winters
Kevin M. McDermott II
SCOTT & WINTERS LAW FIRM, LLC
The Caxton Building
812 Huron Rd. E., Ste. 490
Cleveland, OH 44115
T: 216-912-2221
Email: jscott@ohiowagelawyers.com
        rwinters@ohiowagelawyers.com
        kmcdermott@ohiowagelawyers.com

20

DocuSign Envelope ID: 036BD8CC-F4A2-404B-91C7-057B2D8D05AB

| Plaintiffs: | Plaintiffs' Counsel: |
|---|---|

PARMET PC

**Emanuele Stevens**

**Devin Dobsch**

Matthew S. Parmet
PARMET PC
3 Riverway, Ste. 1910
Houston, TX 77056
T: 713-999-5228
Email: matt@parmet.law

**Tracy Ellis**

**Robney Irving-Millentree**

KLAFTER LESSER LLP

**Tyrell King**

Seth R. Lesser
Jeffrey A. Klafter
KLAFTER LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
T: 914-934-9200
Email: seth@klafterlesser.com
        jak@klafterlesser.com

**Moises Madriz**

**Seth Marshall**

SCOTT & WINTERS LAW FIRM, LLC

**Kennetha Mitchell**

**Thomas Parrish**

Joseph F. Scott
Ryan A. Winters
Kevin M. McDermott II
SCOTT & WINTERS LAW FIRM, LLC
The Caxton Building
812 Huron Rd. E., Ste. 490
Cleveland, OH 44115
T: 216-912-2221
Email: jscott@ohiowagelawyers.com
        rwinters@ohiowagelawyers.com
        kmcdermott@ohiowagelawyers.com

**Allison Poulson**

**Joshua Smith**

20

DocuSign Envelope ID: 3D47AC17-C7B8-49F8-A1DD-A031FE74D212

**Plaintiffs:**

_____

Emanuele Stevens

_____

Devin Dobsch

_____

Tracy Ellis

_____

Robney Irving-Millentree

_____

Tyrell King

_____

Moises Madriz

_____

Seth Marshall

_____

Kennetha Mitchell

_____

Thomas Parrish

_____

Allison Poulson

_____

Joshua Smith

**Plaintiffs' Counsel:**

PARMET PC

_____

Matthew S. Parmet
PARMET PC
3 Riverway, Ste. 1910
Houston, TX 77056
T: 713-999-5228
Email: matt@parmet.law

KLAFTER LESSER LLP

_____

Seth R. Lesser
Jeffrey A. Klafter
KLAFTER LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
T: 914-934-9200
Email: seth@klafterlesser.com
        jak@klafterlesser.com

SCOTT & WINTERS LAW FIRM, LLC

_____

Joseph F. Scott
Ryan A. Winters
Kevin M. McDermott II
SCOTT & WINTERS LAW FIRM, LLC
The Caxton Building
812 Huron Rd. E., Ste. 490
Cleveland, OH 44115
T: 216-912-2221
Email: jscott@ohiowagelawyers.com
        rwinters@ohiowagelawyers.com
        kmcdermott@ohiowagelawyers.com

20

**Plaintiffs:**

Emanuele Stevens

Devin Dobsch

Tracy Ellis

Robney Irving-Millentree

Tyrell King

Moises Madriz

Seth Marshall

Kennetha Mitchell

Thomas Parrish

Allison Poulson

Joshua Smith

**Plaintiffs' Counsel:**

PARMET PC

Matthew S. Parmet
PARMET PC
3 Riverway, Ste. 1910
Houston, TX 77056
T: 713-999-5228
Email: matt@parmet.law

KLAFTER LESSER LLP

Seth R. Lesser
Jeffrey A. Klafter
KLAFTER LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
T: 914-934-9200
Email: seth@klafterlesser.com
        jak@klafterlesser.com

SCOTT & WINTERS LAW FIRM, LLC

Joseph F. Scott
Ryan A. Winters
Kevin M. McDermott II
SCOTT & WINTERS LAW FIRM, LLC
The Caxton Building
812 Huron Rd. E., Ste. 490
Cleveland, OH 44115
T: 216-912-2221
Email: jscott@ohiowagelawyers.com
        rwinters@ohiowagelawyers.com
        kmcdermott@ohiowagelawyers.com

DocuSign Envelope ID: 3BCA20B0-278D-4D21-BED1-096D53533540

**Plaintiffs:**

**Plaintiffs' Counsel:**

PARMET PC

Emanuele Stevens

Devin Dobsch

Matthew S. Parmet
PARMET PC
3 Riverway, Ste. 1910
Houston, TX 77056
T: 713-999-5228
Email: matt@parmet.law

Tracy Ellis

KLAFTER LESSER LLP

Robney Irving-Millentree

Tyrell King

Seth R. Lesser
Jeffrey A. Klafter
KLAFTER LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
T: 914-934-9200
Email: seth@klafterlesser.com
         jak@klafterlesser.com

Moises Madriz

Seth Marshall

SCOTT & WINTERS LAW FIRM, LLC

Kennetha Mitchell

Thomas Parrish

Joseph F. Scott
Ryan A. Winters
Kevin M. McDermott II
SCOTT & WINTERS LAW FIRM, LLC
The Caxton Building
812 Huron Rd. E., Ste. 490
Cleveland, OH 44115
T: 216-912-2221
Email: jscott@ohiowagelawyers.com
         rwinters@ohiowagelawyers.com
         kmcdermott@ohiowagelawyers.com

Allison Poulson

DocuSigned by:

*Joshua Smith*

CB515AF09D6C4AF...

Joshua Smith

20

DocuSign Envelope ID: AE33C21C-05E2-4B20-961A-A8F7BE49FFF8

DocuSigned by:

Jacob Tschudy

_____

Rodney Ulloa

_____

Ricardo Vidaud

_____

Donedward White

_____

Matthew White

_____

Jamal Winger

_____

Jorge Mendoza

MORGAN & MORGAN, P.A.

_____

Ryan Morgan, Esq.
Andrew R. Frisch, Esq.
MORGAN & MORGAN, P.A.
8151 Peters Road, Ste. 4000
Plantation, FL 33324
T: 954-318-0268
Email: RMorgan@forthepeople.com
         AFrisch@forthepeople.com

MICHAEL D. LORE, P.C.

_____

Michael D. Lore, Esq.
MICHAEL D. LORE, P.C.
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
T: 713-782-5291
Email: mlore@lorefirm.com

**ATTORNEYS FOR PLAINTIFFS**

_____
Jacob Tschudy

_____
Rodney Ulloa

_____
Ricardo Vidaud

_____
Donedward White

_____
Matthew White

_____
Jamal Winger

_____
Jorge Mendoza

MORGAN & MORGAN, P.A.

_____
Ryan Morgan, Esq.
Andrew R. Frisch, Esq.
MORGAN & MORGAN, P.A.
8151 Peters Road, Ste. 4000
Plantation, FL 33324
T: 954-318-0268
Email: RMorgan@forthepeople.com
       AFrisch@forthepeople.com

MICHAEL D. LORE, P.C.

_____
Michael D. Lore, Esq.
MICHAEL D. LORE, P.C.
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
T: 713-782-5291
Email: mlore@lorefirm.com

**ATTORNEYS FOR PLAINTIFFS**

DocuSign Envelope ID: 3044F770-1463-4322-90AA-20B71EC64E8A

_____
Jacob Tschudy

MORGAN & MORGAN, P.A.

_____
Rodney Ulloa

_____
Ryan Morgan, Esq.
Andrew R. Frisch, Esq.
MORGAN & MORGAN, P.A.
8151 Peters Road, Ste. 4000
Plantation, FL 33324
T: 954-318-0268
Email: RMorgan@forthepeople.com
        AFrisch@forthepeople.com

_____
Ricardo Vidaud

_____
Donedward White

MICHAEL D. LORE, P.C.

_____
Matthew White

_____
Michael D. Lore, Esq.
MICHAEL D. LORE, P.C.
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
T: 713-782-5291
Email: mlore@lorefirm.com

_____
Jamal Winger

_____
Jorge Mendoza

**ATTORNEYS FOR PLAINTIFFS**

DocuSign Envelope ID: 0542C25F-5A18-402C-BDB1-60AFFC51E945

_____
Jacob Tschudy


_____
Rodney Ulloa


_____
Ricardo Vidaud

DocuSign by:

3321067C97E6050...
Donedward White


_____
Matthew White


_____
Jamal Winger


_____
Jorge Mendoza


MORGAN & MORGAN, P.A.


_____
Ryan Morgan, Esq.
Andrew R. Frisch, Esq.
MORGAN & MORGAN, P.A.
8151 Peters Road, Ste. 4000
Plantation, FL 33324
T: 954-318-0268
Email: RMorgan@forthepeople.com
      AFrisch@forthepeople.com


MICHAEL D. LORE, P.C.


_____
Michael D. Lore, Esq.
MICHAEL D. LORE, P.C.
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
T: 713-782-5291
Email: mlore@lorefirm.com

**ATTORNEYS FOR PLAINTIFFS**

Jacob Tschudy

Rodney Ulloa

Ricardo Vidaud

Donedward White

Matthew White (Jul 13, 2022 14:34 EDT)

Matthew White

Jamal Winger

Jorge Mendoza

MORGAN & MORGAN, P.A.

Ryan Morgan, Esq.
Andrew R. Frisch, Esq.
MORGAN & MORGAN, P.A.
8151 Peters Road, Ste. 4000
Plantation, FL 33324
T: 954-318-0268
Email: RMorgan@forthepeople.com
AFrisch@forthepeople.com

MICHAEL D. LORE, P.C.

Michael D. Lore, Esq.
MICHAEL D. LORE, P.C.
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
T: 713-782-5291
Email: mlore@lorefirm.com

**ATTORNEYS FOR PLAINTIFFS**

DocuSign Envelope ID: AD1BB53A-4CC4-4CC5-9469-E7CD85BADC24

_____
Jacob Tschudy


_____
Rodney Ulloa


_____
Ricardo Vidaud


_____
Donedward White


_____
Matthew White

DocuSigned by:

_____
Jamal Winger


_____
Jorge Mendoza

MORGAN & MORGAN, P.A.


_____
Ryan Morgan, Esq.
Andrew R. Frisch, Esq.
MORGAN & MORGAN, P.A.
8151 Peters Road, Ste. 4000
Plantation, FL 33324
T: 954-318-0268
Email: RMorgan@forthepeople.com
AFrisch@forthepeople.com


MICHAEL D. LORE, P.C.


_____
Michael D. Lore, Esq.
MICHAEL D. LORE, P.C.
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
T: 713-782-5291
Email: mlore@lorefirm.com

**ATTORNEYS FOR PLAINTIFFS**

21

DocuSign Envelope ID: 34FACAA9-DE1D-46F0-B7D8-EDEE3BEBAC9C

_____

Jacob Tschudy


_____

Rodney Ulloa


_____

Ricardo Vidaud


_____

Donedward White


_____

Matthew White


_____

Jamal Winger

DocuSigned by:

_Jorge Mendoza_

Jorge Mendoza


MORGAN & MORGAN, P.A.


_____

Ryan Morgan, Esq.
Andrew R. Frisch, Esq.
MORGAN & MORGAN, P.A.
8151 Peters Road, Ste. 4000
Plantation, FL 33324
T: 954-318-0268
Email: RMorgan@forthepeople.com
       AFrisch@forthepeople.com


MICHAEL D. LORE, P.C.


_____

Michael D. Lore, Esq.
MICHAEL D. LORE, P.C.
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
T: 713-782-5291
Email: mlore@lorefirm.com

**ATTORNEYS FOR PLAINTIFFS**

_____
Jacob Tschudy

_____
Rodney Ulloa

_____
Ricardo Vidaud

_____
Donedward White

_____
Matthew White

_____
Jamal Winger

_____
Jorge Mendoza
_STARR MONTGOMERY_

_____
Starr Montgomery

MORGAN & MORGAN, P.A.

_____
Ryan Morgan, Esq.
Andrew R. Frisch, Esq.
MORGAN & MORGAN, P.A.
8151 Peters Road, Ste. 4000
Plantation, FL 33324
T: 954-318-0268
Email: RMorgan@forthepeople.com
        AFrisch@forthepeople.com

MICHAEL D. LORE, P.C.

_____
Michael D. Lore, Esq.
MICHAEL D. LORE, P.C.
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
T: 713-782-5291
Email: mlore@lorefirm.com

**ATTORNEYS FOR PLAINTIFFS**

DocuSign Envelope ID: E7CF2937-5860-4764-83D6-4597D4C69E50

**Plaintiffs:**

Emanuele Stevens

Devin Dobsch

Tracy Ellis

Robney Irving-Millentree

Tyrell King

Moises Madriz

Seth Marshall

Kennetha Mitchell

Thomas Parrish

Allison Poulson

Joshua Smith

**Plaintiffs' Counsel:**

PARMET PC

*Matthew S. Parmet*
─ DocuSigned by: ─
28A9B8565DE843C...

Matthew S. Parmet
PARMET PC
3 Riverway, Ste. 1910
Houston, TX 77056
T: 713-999-5228
Email: matt@parmet.law


KLAFTER LESSER LLP


Seth R. Lesser
Jeffrey A. Klafter
KLAFTER LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
T: 914-934-9200
Email: seth@klafterlesser.com
        jak@klafterlesser.com


SCOTT & WINTERS LAW FIRM, LLC


Joseph F. Scott
Ryan A. Winters
Kevin M. McDermott II
SCOTT & WINTERS LAW FIRM, LLC
The Caxton Building
812 Huron Rd. E., Ste. 490
Cleveland, OH 44115
T: 216-912-2221
Email: jscott@ohiowagelawyers.com
        rwinters@ohiowagelawyers.com
        kmcdermott@ohiowagelawyers.com

20

DocuSign Envelope ID: E7CF2937-5860-4764-83D6-4597D4C69E50

Jacob Tschudy

_____

Rodney Ulloa

_____

Ricardo Vidaud

_____

Donedward White

_____

Matthew White

_____

Jamal Winger

_____

Jorge Mendoza

_____

MORGAN & MORGAN, P.A.

_Ryan Morgan_

Ryan Morgan, Esq.
Andrew R. Frisch, Esq.
MORGAN & MORGAN, P.A.
8151 Peters Road, Ste. 4000
Plantation, FL 33324
T: 954-318-0268
Email: RMorgan@forthepeople.com
        AFrisch@forthepeople.com

MICHAEL D. LORE, P.C.

_Michael Lore_

Michael D. Lore, Esq.
MICHAEL D. LORE, P.C.
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
T: 713-782-5291
Email: mlore@lorefirm.com

**ATTORNEYS FOR PLAINTIFFS**

_____
Jacob Tschudy


_____
Rodney Ulloa


_____
Ricardo Vidaud


_____
Donedward White


_____
Matthew White


_____
Jamal Winger


_____
Jorge Mendoza


_____
Starr Montgomery

MORGAN & MORGAN, P.A.


_____
Ryan Morgan, Esq.
Andrew R. Frisch, Esq.
MORGAN & MORGAN, P.A.
8151 Peters Road, Ste. 4000
Plantation, FL 33324
T: 954-318-0268
Email: RMorgan@forthepeople.com
    AFrisch@forthepeople.com


MICHAEL D. LORE, P.C.


_____
Michael D. Lore, Esq.
MICHAEL D. LORE, P.C.
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
T: 713-782-5291
Email: mlore@lorefirm.com

**ATTORNEYS FOR PLAINTIFFS**

Defendants:

**PepsiCo, Inc. and Subsidiaries**

By: _____

Its: SVP, Chief Counsel, Global Human Resources

**New Tiger LLC and Subsidiaries**

By: _____

Its: Chief Legal Officer

**Defendants' Counsel:**

_____
Alison R. Ashmore
DYKEMA GOSSETT PLLC
1717 Main St., Ste. 4200
Dallas, Texas 75201
T: 214-462-6454
Email: aashmore@dykema.com

_____
Linda H. Joseph, Esq.
Ginger D. Schroder, Esq.
SCHRÖDER, JOSEPH & ASSOCIATES, LLP
349 Franklin St., 2nd Floor
Buffalo, NY 14202
T: 713-881-4901
Email: ljoseph@sjalegal.com

_____
Alexander M. Chemers
SBN: 263726
OGLETREE DEAKINS
400 South Hope Street
Los Angeles, CA 90071
T: 213-330-0802
*alexander.chemers@ogletree.com*

ATTORNEYS FOR DEFENDANTS

22

**Defendants:**

**PepsiCo, Inc. and Subsidiaries**

By: _Michele K. Thatcher_

Its: SVP, Chief Counsel, Global Human Resources

**New Tiger LLC and Subsidiaries**

By: _____

Its: _____

**Defendants' Counsel:**

Alison R. Ashmore
DYKEMA GOSSETT PLLC
1717 Main St., Ste. 4200
Dallas, Texas 75201
T: 214-462-6454
Email: aashmore@dykema.com

Linda H. Joseph, Esq.
Ginger D. Schroder, Esq.
SCHRÖDER, JOSEPH & ASSOCIATES, LLP
349 Franklin St., 2nd Floor
Buffalo, NY 14202
T: 713-881-4901
Email: ljoseph@sjalegal.com

Alexander M. Chemers
SBN: 263726
OGLETREE DEAKINS
400 South Hope Street
Los Angeles, CA 90071
T: 213-330-0802
*alexander.chemers@ogletree.com*

**ATTORNEYS FOR DEFENDANTS**

*Exhibit A*

**Exhibit A**

**PepsiCo, Inc and subidiaries ("PepsiCo"):**
Bottling Group, LLC
CB Manufacturing Company, Inc.
FL Transportation, Inc.
Frito-Lay, Inc.
Golden Grain Company
Grayhawk Leasing, LLC
New Bern Transport Corporation
Pepsi Northwest Beverages LLC
Pepsi-Cola Sales & Distribution, Inc.
Pepsi-Cola Technical Operations, Inc.
PepsiCo Beverage Sales LLC
PepsiCo Sales, Inc.
PepsiCo, Inc.
Quaker Manufacturing, LLC
Rolling Frito-Lay Sales, LP
SVC Manufacturing, Inc.

**New Tiger LLC and subsidiaries ("New Tiger"):**
New Tiger LLC
Juice Transport, Inc.
Tropicana Manufacturing Company, Inc.
Tropicana Products, Inc.
Tropicana Services, Inc.
Naked Juice Co. of Glendora, Inc.

*Exhibit B*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMANUELE STEVENS, individually and on behalf of all others similarly situated, ) | **CASE NO. 7:22-cv-00802-NSR** |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| PEPSICO INC., BOTTLING GROUP, LLC, CB MANUFACTURING COMPANY, INC., FL TRANSPORTATIONS, INC., FRITO-LAY, INC., GOLDEN GRAIN, INC., GRAYHAWK LEASING, LLC, JUICE TRANSPORT, INC., NEW BERN TRANSPORT CORPORATION, PEPSI NORTHWEST BEVERAGES, LLC, PEPSI-COLA SALES & DISTRIBUTION, INC., PEPSI-COLA BEVERAGE SALES, LLC, PEPSICO SALES, INC., QUAKER MANUFACTURING, LLC, ROLLING FRITO-LAY SALES, LP, SVC MANUFACTURING, INC., TROPICANA MANUFACTURING CO., TROPICANA PRODUCT SALES, INC., TROPICANA SERVICES, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| MOISES MADRIZ AND RODNEY ULLOA, individually and on behalf of all others similarly situated, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:22-cv-04851-NSR |
| ) | |
| PEPSICO, INC.; NAKED JUICE CO.; NAKED JUICE CO. OF GLENDORA, INC.; TROPICANA PRODUCTS, INC.; TROPICANA SERVICES, INC.,; and DOES #1 through #50, inclusive, ) | |
| ) | |
| Defendants. ) | |

1

| | |
|---|---|
| RICARDO VIDAUD and JORGE MENDOZA, each individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 1:22-cv-04850-NSR ) |
| PEPSICO INC., NEW BERN TRANSPORT CORPORATION, and DOES #2 through #50, inclusive, | ) ) ) ) |
| Defendant. | ) ) |
| SETH MARSHALL and MATTHEW WHITE, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CASE NO. 7:22-cv-02370-NSR ) |
| PEPSICO INC., BOTTLING GROUP, LLC, and CB MANUFACTURING COMPANY, INC., | ) ) ) |
| Defendants. | ) ) |
| TYRELL KING, individually and on behalf of all others similarly situated, | ) CASE NO. 4:22-cv-00360-NSR ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| PEPSICO INC., | ) ) |
| Defendant. | ) ) |
| KENNETHA MITCHELL, individually and on behalf of all others similarly situated, | ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 7:22-cv-04555-NSR |

PEPSICO INC.,                                                    )
                                                                )
                Defendant.                                      )

DONEDWARD WHITE, individually and on                            )
behalf of all others similarly situated,                        )
                                                                )
                Plaintiff,                                      )
                                                                )
v.                                                              )   CASE NO. 7:22-cv-05198-NSR
                                                                )
PEPSICO INC.,                                                   )
                                                                )
                Defendant.                                      )
                                                                )

JAMAL WINGER, individually and on                               )
behalf of all others similarly situated,                        )
                                                                )
                Plaintiff,                                      )
                                                                )
v.                                                              )   CASE NO. 1:22-cv-04828-NSR
                                                                )
THE QUAKER OATS CO.,                                            )
                                                                )
                Defendant.                                      )
                                                                )

ALLISON POULSON, individually and on                            )
behalf of all others similarly situated,                        )
                                                                )
                Plaintiff,                                      )
                                                                )
v.                                                              )   CASE NO. 7:22-cv-05196-NSR
                                                                )
PEPSICO INC. d/b/a PFS and FRITO-LAY,                           )
INC.                                                            )
                                                                )
                Defendants.                                     )
                                                                )

ROBNEY IRVING-MILLENTREE,                                       )
individually and on behalf of all others                        )
similarly situated,                                             )
                                                                )
                Plaintiff,                                      )
                                                                )
v.                                                              )   CASE NO. 1:22-cv-04784-NSR

3

|  |  |
|---|---|
| PEPSICO INC., | ) |
|  | ) |
| Defendant. | ) |
| TRACY ELLIS, | ) |
| individually and on behalf of all others | ) |
| similarly situated, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) CASE NO. 7:22-cv-05200-NSR |
|  | ) |
| PEPSICO INC., | ) |
|  | ) |
| Defendant. | ) |
|  | ) |
| THOMAS PARRISH, individually and on | ) |
| behalf of all others similarly situated, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) CASE NO. 7:22-cv-04556-NSR |
|  | ) |
| FRITO-LAY NORTH AMERICA, INC. and | ) |
| PEPSICO, INC. | ) |
|  | ) |
| Defendants. | ) |
|  | ) |
| DEVIN DROBSCH, individually and on | ) |
| behalf of all others similarly situated, | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
| v. | ) CASE NO. 7:22-cv-04216-NSR |
|  | ) |
| PEPSICO INC., | ) |
|  | ) |
| Defendant. | ) |
|  | ) |
| JOSHUA SMITH, individually and on behalf | ) |
| of all others similarly situated, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) CASE NO. 7:22-cv-04238-NSR |
|  | ) |

4

PEPSICO INC.,                                        )
                                                    )
                    Defendant.                      )
                                                    )
_____            )
JACOB TSCHUDY, individually and on                  )
behalf of all others similarly situated,            )
                                                    )
                    Plaintiff,                      )
                                                    )
v.                                                  )     CASE NO. 7:22-cv-04212-NSR
                                                    )
PEPSICO INC.,                                       )
                                                    )
                    Defendant.                      )
                                                    )
_____            )

## [PROPOSED] PRELIMINARY APPROVAL ORDER

WHEREAS, Plaintiffs Emanuele Stevens, Moises Madriz, Rodney Ulloa, Ricardo Vidaud, Jorge Mendoza, Seth Marshall, Matthew White, Tyrell King, Kennetha Mitchell, Donedward White, Jamal Winger, Allison Poulson, Rodney Irving-Millentree, Tracy Ellis, Thomas Parrish, Devin Dobsch, Joshua Smith, and Jacob Tschudy ("Plaintiffs") and Defendants PepsiCo, Inc. ("PepsiCo"), New Tiger LLC ("New Tiger"), and their various respective divisions and subsidiaries, a list of which is attached hereto as Exhibit A (collectively, "Defendants") (Plaintiffs and Defendants together, the "Parties") have entered into a Stipulation and Settlement Agreement ("Settlement Agreement") intended to resolve the claims asserted in this action that Defendants failed to timely, accurately, and/or fully pay Plaintiffs and Defendants' other non-exempt employees employed in the United States for all hours worked during the seventeen pay periods between December 5, 2021 and April 8, 2022 (the "Class Period") and all other related claims arising under the Fair Labor Standards Act and state wage and hour related laws (the "Claims"), due to their payroll provider, the Ultimate Kronos Group ("Kronos") experiencing a cybersecurity

incident that began on or about December 11, 2021 through February 12, 2022  (the "Kronos Outage"); and

WHEREAS, the Settlement Agreement, together with its Exhibits, sets forth the terms and conditions for a proposed settlement and dismissal with prejudice of these Claims against Defendants; and

WHEREAS, for purposes of settlement only, Plaintiffs seek certification of the following opt-out settlement class and subclasses pursuant to Fed. R. Civ. P. 23:

**NATIONAL CLASS[1]:** All current and former employees of Defendants in the United States during the seventeen weekly pay periods between December 5, 2021, and April 8, 2022, who were impacted by the Kronos Outage.  For purposes of the Settlement Agreement, an employee was impacted by the Kronos Outage if that employee received an inaccurate pay stub or inaccurate compensation at any time during the Class Period, regardless of whether that employee's compensation paid during the the Kronos Outage as compared to compensation owed for the Kronos Outage timeperiod resulted in a net positive (overpayment), net neutral, or net negative (underpayment) to that employee.

**NEW YORK SUBCLASS:**

All current and former employees of Defendants in New York during the seventeen pay periods between December 5, 2021, and April 8, 2022, who were impacted by the Kronos Outage. For purposes of the Settlement Agreement, an employee was impacted by the Kronos Outage if that employee received an inaccurate pay stub or inaccurate compensation at any time during the Class Period, regardless of whether that employee's compensation paid during the the Kronos Outage as compared to compensation owed for the Kronos Outage timeperiod resulted in a net positive (overpayment), net neutral, or net negative (underpayment) to that employee.

**CALIFORNIA SUBCLASS:**

All current and former employees of Defendants in California during the seventeen weekly pay periods between December 5, 2021, and April 8, 2022, who were impacted by the Kronos Outage. For purposes of the Settlement Agreement, an employee was impacted by the Kronos Outage if that employee received an inaccurate pay stub or inaccurate compensation at any time during the Class Period, regardless of whether that employee's compensation paid during the the Kronos Outage as compared to compensation owed for the Kronos Outage timeperiod

---

[1] As such term is defined in the Settlement Agreement.

resulted in a net positive (overpayment), net neutral, or net negative (underpayment) to that employee.

WHEREAS, for purposes of settlement only, Plaintiffs also seek conditional certification of the following opt-in collective pursuant to Section 16(b) of the Federal Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) (the "FLSA Collective"):

> All current and former employees of Defendants in the United States during the seventeen weekly pay periods between December 5, 2021, and April 8, 2022, who were impacted by the Kronos Outage.  For purposes of the Settlement Agreement, an employee was impacted by the Kronos Outage if that employee received an inaccurate pay stub or inaccurate compensation at any time during the Class Period, regardless of whether that employee's compensation paid during the the Kronos Outage as compared to compensation owed for the Kronos Outage timeperiod resulted in a net positive (overpayment), net neutral, or net negative (underpayment) to that employee.

WHEREAS, the Court has before it Plaintiffs' Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement ("Plaintiffs' Motion") and papers in support thereof, together with the Settlement Agreement and its Exhibits; and

WHEREAS, the Court is satisfied that the terms and conditions set forth in the Settlement Agreement are the result of good faith, arms' length settlement negotiations between competent and experienced counsel for both the Plaintiffs and Defendants; and

WHEREAS, having reviewed and considered the Settlement Agreement and accompanying Exhibits, Plaintiffs' Motion, and the declaration filed in support of Plaintiffs' Motion, the Court makes the findings and grants the relief set forth below.

**IT IS HEREBY ORDERED AS FOLLOWS:**

***Jurisdiction, Preliminary Approval of the Settlement Agreement, Certification of the National Class  and California and New York Subclasses for Settlement Purposes, Appointment of Class Representatives and Class Counsel, and Conditional Certification of the FLSA Collective***

1.     Capitalized terms used in this Order have the meanings assigned to them in the Settlement Agreement and this Order.

7

2.     The Court has jurisdiction over the subject matter of this lawsuit (the "Litigation"), Plaintiffs, the members of the FLSA Collective, National Class and New York and California Subclasses, Defendants, and the implementation and administration of the Settlement Agreement.

3.     The Court preliminarily adjudges the terms of the Settlement Agreement to be fair, reasonable and adequate, and in the best interests of Plaintiffs and members of the FLSA Collective, National Class, and New York and California Subclasses, and directs consummation of the terms.

4.     The Court hereby preliminarily finds that with respect to the National Class and the New York and California Subclasses:

a.     The numerosity requirements of Rule 23(a)(1) have been met because there are 69,809 National Class Members, there are 2,766 New York Subclass Members, and there are 7,262 California Subclass members.  Plaintiffs Matthew White and Thomas Parrish are the proposed representatives for the New York Subclass ("New York Plaintiffs") and Plaintiffs Ricardo Vidaud, Moises Madriz, Rodney Ulloa, and Jorge Mendoza are the proposed representatives for the California Subclass ("California Plaintiffs").

b.     The commonality requirements of Rule 23(a)(2) have been met because Plaintiffs and the National Class Members, New York Plaintiffs and the New York Subclass Members, and California Plaintiffs and the California Subclass Members, all share common issues of fact and law, including whether Defendants' alleged failure to accurately and timely pay each of them violated state law requirements for the timely payment of wages and for providing accurate wage statements and whether they are entitled to additional liquidated damages or penalties.

c.     The typicality requirements of Rule 23(a)(3) have been met because Plaintiffs' claims, the New York Plaintiffs' claims, and California Plaintiffs' claims for overtime

pay arise from the same factual and legal circumstances that form the bases of National Class Members', New York Subclass Members' and California Subclass Members' claims, respectively.

        d.     The adequacy requirements of Rule 23(a)(4) have been met because Plaintiffs', the New York Plaintiffs', and the California Plaintiffs' interests are not antagonistic or at odds with, respectively, the National Class Members' interests, the New York Subclass Members' interests, and the California Subclass Members' interests. Additionally, Plaintiffs' Counsel also meet the adequacy requirement of Rule 23(a)(4) because the attorneys here, Seth Lesser of Klafter Lesser, LLP, Ryan Winters of Scott & Winters Law Firm, LLC, Matthew Parmet of Parmet PC, and Andrew Frisch of Morgan & Morgan, P.A., have acted as Lead Counsel in dozens of class actions, and because Plaintiffs' Counsel have achieved a commendable result, given the complexities of this Litigation.

        e.     The predominance and superiority requirements of Rule 23(b)(3) are also met because the common issues identified in subsection (b) above will predominate over any individual issues in this Litigation and adjudicating all claims arising from the Kronos Outage in one class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

        5.     Accordingly, the Court hereby preliminarily certifies the National Class, the New York Subclass and the California Subclass, as each is defined above, pursuant to Fed. R. Civ. P. 23(a) and (b)(3) for settlement purposes only in accordance with the terms of the Settlement Agreement. The Court further preliminarily appoints Plaintiffs as Class Representatives of the National Class, the New York Plaintiffs as Class Representatives of the New York Subclass, and the California Plaintiffs as Class Representatives of the California Subclass, and Seth Lesser of Klafter Lesser, LLP, Ryan Winters of Scott & Winters Law Firm, LLC, Matthew Parmet of Parmet

PC, and Andrew Frisch of Morgan & Morgan, P.A., as Class Counsel pursuant to Fed. R. Civ. P. 23(g). Plaintiffs, the New York Plaintiffs, and the California Plaintiffs, together with Class Counsel, are hereby authorized to act on behalf of themselves and members of the National Class, the New York Subclass or California Subclass, respectively, with respect to the Litigation and the Settlement Agreement.

6. The Court also preliminarily finds that Plaintiffs are "similarly situated" to the members of the FLSA Collective pursuant to 29 U.S.C. § 216(b). Accordingly, the Court hereby conditionally certifies the FLSA Collective defined above, for settlement purposes only, in accordance with the terms of the Settlement Agreement.

7. If the Settlement Agreement is terminated pursuant to the terms of the Settlement Agreement or this Court does not grant Final Approval of the Settlement Agreement, or the settlement is not consummated for any reason whatsoever, this certification of the National Class, the New York Subclass, the California Subclass, and the FLSA Collective shall automatically be cancelled and shall be void and, in such event, this Court's certification of this National Class and the New York and California Subclasses and the FLSA Collective shall not, in any way, have any effect on Defendants' rights to challenge the propriety of any class or collective action certification for any purpose. Additionally, Plaintiffs, pursuant to the terms of the Settlement Agreement, reserve all of their rights, including the right to continue with the litigation of the claims asserted in this Litigation should the Settlement Agreement not be consummated.

### *Notice to National Class, California and New York Subclasses and FLSA Collective*

8. The Court authorizes notice of the settlement set forth in the Settlement Agreement to the members of the National Class, the New York Subclass, the California Subclass, and the FLSA Collective, as the proposed settlement falls within the range of reasonableness, and may be adjudicated fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23 and the Class

10

Action Fairness Act of 2005 ("CAFA"), and the applicable standards for approval of an FLSA Collective settlement, upon final consideration thereof at the Final Approval Hearing provided for below.

9.  The content of the proposed Settlement Notice to the members of the National Class, the New York Subclass, the California Subclass, and the FLSA Collective, attached as Exhibit B hereto, is hereby approved.  The Settlement Notice is accurate, objective, informative and will provide the members of the National Class, the New York Subclass, the California Subclass, and the FLSA Collective members with the information necessary to make an informed decision regarding their participation in, exclusion from, or objection to the Settlement Agreement and its fairness.

10.  The method of disseminating the Settlement Notice to be sent to the members of the National Class, the New York Subclass, the California Subclass and the FLSA Collective, as set forth in the Settlement Agreement, is hereby found to be the best practicable means of providing notice of the settlement under the circumstances and, when sent, shall constitute due and sufficient notice of the proposed Settlement and the Final Approval Hearing to all members of the National Class, the New York Subclass, the California Subclass, and the FLSA Collective entitled to participate in the settlement, in full compliance with the notice requirements of Fed R. Civ. P. 23, due process, the Constitution of the United States, the laws of the New York and all other applicable laws.  The Parties are directed to ensure that the Settlement Notice, in substantially the same form as is attached as Exhibit B hereto, is disseminated to members of the National Class, the New York Subclass, the California Subclass and the FLSA Collective according to Section 12 of the Settlement Agreement.  Such Settlement Notice shall issue on or before the date that is twenty-one (21) days from the entry of this Preliminary Approval Order.

11

## *Appointment of Settlement Administrator*

11.     The Court approves and appoints Angeion Group (the Settlement Administrator") to serve as the Settlement Administrator in accordance with the terms of the Settlement Agreement and this Order.  By agreeing to serve as the Settlement Administrator, Angeion Group voluntarily agrees to subject itself to the jurisdiction of this Court and waives any jurisdictional objections.

12.     The Settlement Administrator shall perform the duties of the Settlement Administrator set forth in the Settlement Agreement, including but not limited to the distribution of the Settlement Notice to members of the National Class, the New York Subclass, the California Subclass, and the FLSA Collective and all other duties enumerated in Section 10 of the Settlement Agreement.

13.     Prior to the Final Approval Hearing, the Settlement Administrator shall provide to the Parties a sworn statement attesting to compliance with the terms of the Settlement Agreement, and the Parties shall file that statement with the Court.

## *Requests for Exclusion from the National Class*

14.     Members of the National Class may request exclusion from the National Class (and thereby concomitantly from the New York and California Subclasses, if applicable) by sending a written request for exclusion to the Settlement Administrator, at the address indicated in the Settlement Notice, via First-Class United States mail, postage prepaid, so that it is postmarked by forty-five (45) calendar days after the date on which the Settlement Administrator mails the Settlement Notice to the members of the National Class, in accordance with the terms of the Settlement Agreement.  In order to be effective, this request for exclusion must expressly state the individual's desire to be excluded from the Settlement and shall be in writing and state the full name of the individual seeking to be excluded and include his or her current address, work location,

and signature. Any request for exclusion from the National Class shall be deemed to also request exclusion from any applicable State Subclass. Requests for exclusion that do not include all required information, or that are not timely received by the Settlement Administrator, will be deemed null, void, and ineffective.

15. By opting out, any member of the National Class who previously filed a consent form to join the FLSA Collective shall be deemed to have withdrawn that consent and will no longer be a member of the FLSA Collective for any purpose, including this Settlement Agreement.

16. Members of the National Class may not exclude themselves by filing requests for exclusion as a group or class. They must individually and personally submit a request for exclusion and timely transmit it to the Settlement Administrator in accordance with the terms of the Settlement Agreement.

17. Any member of the National Class who does not properly and timely opt-out shall be bound by all the terms and provisions of the Settlement Agreement, the Final Approval Order, and the releases set forth therein, and will be deemed to have waived all objections and opposition to the fairness, reasonableness, and adequacy of the Settlement Agreement, whether or not such person objected to the Settlement.

18. All members of the National Class who submit valid and timely notices of their intent to be excluded from the National Class, including but not limited to those who are also members of the FLSA Collective, shall not: (i) have any rights under the Settlement Agreement; (ii) be entitled to receive a settlement payment; (iii) have a right to object to the Settlement; and (iv) be bound by the Settlement Agreement or any Final Approval Order.

19. Any member of the National Class who does not elect to be excluded from the National Class may, but need not, enter an appearance through his or her own attorney. Members

13

of the National Class who do not enter an appearance through their own attorneys will be represented by Class Counsel.

### *Objections by Members of the National Class to the Settlement*

20.     Any member of the National Class who does not opt-out from the National Class may object to the Settlement or any portion thereof, or any other matters to be considered by the Court during the Final Approval Hearing (as indicated in paragraph 23, below) by sending a written objection to the counsel for the Parties and to the Court, as indicated in the Settlement Notice, via First-Class United States mail, postage prepaid, so that it is received or postmarked by forty-five (45) calendar days after the date on which the Settlement Administrator mails the Settlement Notice to the members of the National Class, in accordance with the terms of the Settlement Agreement.  In order to be effective, this writing must express the individual's desire to object to the Settlement and must be signed by the National Class Member and include his/her/their name, current mailing and email addresses, and phone numbers, and state all grounds for the objection. If the objector is represented by counsel, the written objection must state so and provide the name and address of the counsel.  If the objector intends to appear at the Final Approval hearing by himself/herself/theirself or by counsel, the written objection must also so state whether the objector or his/her/their attorney is making an appearance.

21.     No member of the National Class shall be entitled to be heard at the Final Approval Hearing (whether individually or through separate counsel) or to object to any matters to be considered by the Court at the Final Approval Hearing (as specified in paragraphs 23-24 below), and no written objections or materials submitted by any member of the National Class shall be received or considered by the Court at the Final Approval Hearing, unless such written objections or materials comply with the requirements of this Order, are timely filed and served as set forth

herein and as detailed in the form of Settlement Notice. Any member of the National Class who seeks to object but fails to comply with the requirements of this Order will be deemed to have waived any right to object.

### *Other Related State Court Actions*

22. During the pendency of the foregoing settlement process, and to promote an orderly settlement process and thereby to protect the Court's jurisdiction over the proposed settlement and settlement class and the subclasses, any pending action filed in any state court that asserts any FLSA and/or state law wage and hour claims relating to the Kronos Outage against any Defendant is hereby enjoined from proceeding during the pendency of this Court's approval process. This injunction would apply hereafter to any newly filed case but specifically applies, at present, to, *William Muller and Jamaar Codrington, et al. v. PepsiCo, Inc., New Bern Transport Corporation, Bottling Group, LLC, et al.*, Case No. CGC-22-597909 (San Francisco Superior Court). At the Final Approval Hearing, this Court will consider whether and, if so, to what extent, this injunction shall continue. By this Order, counsel for Defendants are ordered to serve counsel in the *William Muller* lawsuit, just cited, with a copy of this Order within five business days.

### *The Final Approval Hearing*

23. A hearing on Final Approval of the Settlement (the "Final Approval Hearing") is hereby scheduled to be held before this Court on _____ day of _____ 2022 at ___:__0 _.M. in Courtroom __ of the The Hon. Nelson Román, Federal Courthouse, 300 Quarropas Street White Plains, NY 10601-4150. At this Fairness Hearing, the Court will determine whether: (a) the settlement set forth in the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the members of the National Class and Subclasses and the FLSA Collective; and (b) a

Final Judgment as provided in the Settlement Agreement should be entered granting final approval of the Settlement.

24.     At the Final Approval Hearing, the Court shall also consider Class Counsel's application for attorneys' fees, costs and expenses and their application for Service Payments to the Class and Subclass Representatives (the "Applications").  Any Application shall be filed with the Court concurrently with the Motion for Final Approval of the Settlement Agreement, which shall be filed fourteen (14) days prior to the Final Approval Hearing.

25.     The date and time of the Final Approval Hearing shall be set forth in the Settlement Notice, but the Final Approval Hearing shall be subject to adjournment by the Court without further notice to the members of the National Class other than those who are Objectors.

SO ORDERED, this _____ day of _____, 2022

_____
Hon. Nelson S. Román
United States District Judge

*Exhibit C*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| EMANUELE STEVENS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CASE NO. 7:22-cv-00802-NSR |
| PEPSICO INC., BOTTLING GROUP, LLC, CB MANUFACTURING COMPANY, INC., FL TRANSPORTATIONS, INC., FRITO-LAY, INC., GOLDEN GRAIN, INC., GRAYHAWK LEASING, LLC, JUICE TRANSPORT, INC., NEW BERN TRANSPORT CORPORATION, PEPSI NORTHWEST BEVERAGES, LLC, PEPSI-COLA SALES & DISTRIBUTION, INC., PEPSI-COLA BEVERAGE SALES, LLC, PEPSICO SALES, INC., QUAKER MANUFACTURING, LLC, ROLLING FRITO-LAY SALES, LP, SVC MANUFACTURING, INC., TROPICANA MANUFACTURING CO., TROPICANA PRODUCT SALES, INC., TROPICANA SERVICES, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **PLAINTIFFS' CONSOLIDATED FED. R. CIV. P. 23 CLASS AND FLSA COLLECTIVE ACTION COMPLAINT** <br><br> <u>JURY TRIAL DEMANDED</u> |
| Defendants. | ) ) ) | |
| MOISES MADRIZ AND RODNEY ULLOA, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CASE NO. 1:22-cv-04851-NSR |
| PEPSICO, INC.; NAKED JUICE CO.; NAKED JUICE CO. OF GLENDORA, INC.; TROPICANA PRODUCTS, INC.; TROPICANA SERVICES, INC.,; and DOES #1 through #50, inclusive, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

1

| | |
|---|---|
| RICARDO VIDAUD, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 1:22-cv-04850-NSR ) |
| PEPSICO INC., | ) ) |
| Defendant. | ) ) ) |
| SETH MARSHALL and MATTHEW WHITE, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CASE NO. 7:22-cv-02370-NSR ) |
| PEPSICO INC., BOTTLING GROUP, LLC, and CB MANUFACTURING COMPANY, INC., | ) ) ) ) |
| Defendants. | ) ) |
| TYRELL KING, individually and on behalf of all others similarly situated, | ) CASE NO. 4:22-cv-00360-KGB ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| PEPSICO INC., | ) ) |
| Defendant. | ) ) |
| KENNETHA MITCHELL, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 7:22-cv-04555-NSR ) |
| PEPSICO INC., | ) ) |
| Defendant. | ) ) |

| | |
|---|---|
| DONEDWARD WHITE, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>v.<br><br>PEPSICO INC.,<br><br>            Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   CASE NO. 7:22-cv-05198-NSR<br>)<br>)<br>)<br>)<br>)<br>) |
| JAMAL WINGER, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>v.<br><br>THE QUAKER OATS CO.,<br><br>            Defendant. | )<br>)<br>)<br>)<br>)<br>)   CASE NO. 1:22-cv-04828-NSR<br>)<br>)<br>)<br>)<br>)<br>) |
| ALLISON POULSON, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>v.<br><br>PEPSICO INC. d/b/a PFS and FRITO-LAY, INC.<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)   CASE NO. 7:22-cv-05196-NSR<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| ROBNEY IRVING-MILLENTREE, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>v.<br><br>PEPSICO INC.,<br><br>            Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   CASE NO. 1:22-cv-04784-NSR<br>)<br>)<br>)<br>)<br>) |

3

| | |
|---|---|
| TRACY ELLIS,<br>individually and on behalf of all others<br>similarly situated, | ) )<br>) )<br>) |
| Plaintiff, | ) )<br>) |
| v. | ) CASE NO. 7:22-cv-05200-NSR |
| PEPSICO INC., | )<br>)<br>) |
| Defendant. | )<br>)<br>) |
| THOMAS PARRISH, individually and on<br>behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | ) CASE NO. 7:22-cv-04556-NSR |
| FRITO-LAY NORTH AMERICA, INC. and<br>PEPSICO, INC. | )<br>)<br>) |
| Defendants. | )<br>)<br>) |
| DEVIN DROBSCH, individually and on<br>behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiffs, | )<br>)<br>) |
| v. | ) CASE NO. 7:22-cv-04216-NSR |
| PEPSICO INC., | )<br>)<br>) |
| Defendant. | )<br>)<br>) |
| JOSHUA SMITH, individually and on behalf<br>of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | ) CASE NO. 7:22-cv-04238-NSR |
| PEPSICO INC., | )<br>)<br>) |
| Defendant. | )<br>)<br>) |

|  |  |
|---|---|
| JACOB TSCHUDY, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 7:22-cv-04212-NSR ) |
| PEPSICO INC., | ) ) |
| Defendant. | ) ) ) |

The above named plaintiffs (hereinafter "Plaintiffs") by and through counsel, file this

Consolidated Class and Collective Action Complaint against the following Defendants:

PEPSICO INC.; BOTTLING GROUP, LLC; CB MANUFACTURING COMPANY, INC.; FL

TRANSPORTATION, INC.; FRITO-LAY, INC.; GOLDEN GRAIN COMPANY;

GRAYHAWK LEASING, LLC; NEW BERN TRANSPORT CORPORATION; PEPSI

NORTHWEST BEVERAGES LLC; PEPSI-COLA SALES & DISTRIBUTION, INC.; PEPSI-

COLA TECHNICAL OPERATIONS, INC.; PEPSI-COLA BEVERAGE SALES LLC;

PEPSICO SALES, INC.; QUAKER MANUFACTURING, LLC, ROLLING FRITO-LAY

SALES, LP; SVC MANUFACTURING, INC.; NEW TIGER LLC, JUICE TRANSPORT, INC.;

TROPICANA MANUFACTURING COMPANY, INC.; TROPICANA PRODUCTS, INC.;

TROPICANA SERVICES, INC.; NAKED JUICE CO. OF GLENDORA, INC. (hereinafter

collectively referred to as "Defendants"), and allege the following

**<u>INTRODUCTION</u>**

1. The Fair Labor Standards Act of 1938, as amended (the "FLSA"), 29 U.S.C. §

201, *et seq.* is a broadly remedial and humanitarian statute designed to correct "labor conditions

detrimental to the maintenance of the minimum standard of living necessary for health,

efficiency, and general well-being of workers[,]" 29 U.S.C. § 202(a), as well as "to protect all

covered workers from substandard wages and oppressive working hours." *Barrentine v. Ark Best Freight Sys. Inc*., 450 U.S. 728, 739 (1981). The FLSA required Defendants to pay all non-exempt employees at least one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours each workweek. 29 U.S.C. § 207.  *See also* 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7 (provisions relating to required record-keeping); *see also* California Labor Code § 226 (similar state law provision); NY CLS Labor § 195 (same). In addition, pursuant to the common law (including common laws pertaining to unjust enrichment and quantum meruit), and/or as well as state wage acts and implementing regulations in numerous states, employers, such as Defendants, who obtain the benefit of employees' work, and who fail, or intentionally fail to pay an employee wages in conformance with their agreements to pay, or to pay pursuant to statutory wage provisions, are liable to employees for the wages or expenses that were not paid, and, in some instances under state wage laws, liquidated damages, court costs, and attorneys' fees incurred in recovering the unpaid wages (collectively, the "State Labor Laws").[1]  Further, two states, California and New York, have statutory provisions that provide for additional statutory penalties for their failure to provide wage statements, for providing inaccurate wage statements, and for violating unfair competition laws.[2]

---

[1] The following states maintain analogous state overtime laws to the FLSA: Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Texas, Virginia, Washington, and Wisconsin. The other states present common law claims.

[2] *See* CAL. LAB. CODE §§ 226, 510, 1194, 1194.5; IWC Wage Orders #1-2001 through #17-2001; Cal. Bus. & Prof. Code §§ 17200 *et seq.*; New York Law, the New York Minimum Wage Act, NY CLS Labor §§ 65, et seq. and New York's Wage Theft Prevention Act, NY CLS Labor §§ 191, *et seq.*

2.    In or about mid-December 2021, Defendants' payroll provider, Ultimate Kronos Group ("Kronos"), was subject to a purported cybersecurity incident.[3]

3.    As a result, Defendants have violated the FLSA as well as State laws relating to or arising out of the Kronos Outage, including all state, local, and federal claims for: unpaid wages (whether minimum wage or overtime), the failure to timely pay wages, the failure to record hours worked, paystub requirements, reimbursement, and all related claims for statutory damages or penalties since approximately mid-December, 2021, after the outset of the Kronos cybersecurity incident.

4.    Plaintiffs bring this case to challenge the policies and practices of Defendants that violate the FLSA and State Labor Laws, as well the pertinent California and New York wage laws.

5.    Plaintiffs bring this case as a nationwide FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and in behalf of himself or themselves and other employees similarly situated" (the "FLSA Collective").

6.    Plaintiffs also bring this case as a class action under Fed. R. Civ. P. 23 on behalf of themselves and other members of a class of persons who assert factually-related claims under the wage-and-hour statutes of the State Labor Laws ("the National Class"), the State of California (the "California Subclass") and the State of New York (the "New York Subclass") (for convenience, the National Class, the California Subclass, and the New York Subclass are referred to herein as the "State Classes").

---

[3] *See* https://www.usatoday.com/story/tech/2021/12/13/kronos-ransomware-attack-2021/6501274001/ (last accessed Jan. 28, 2022).

7.      Plaintiffs and other members of the FLSA Collective, National Class and the State Subclasses now seek to exercise their rights to recover all damages,  additional statutory and liquidated damages, and penalties available in this matter, in addition to prejudgment interest, costs and attorneys' fees incurred in prosecuting this action, and such further relief as the Court deems equitable and just.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

9.      This Court has supplemental jurisdiction over Plaintiffs' State Labor Law claims pursuant to 28 U.S. § 1367 because those claims are so related to the FLSA claims as to form part of the same case or controversy.

10.      Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b) because one or more of the Defendants reside in this district and division.

## PARTIES

11.      Plaintiff Emanuele Stevens is an individual and a resident of Ohio and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

12.      Plaintiff Moises Madriz is an individual and resident of California and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

13.      Plaintiff Rodney Ulloa is an individual and resident of California and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

14.     Plaintiff Ricardo Vidaud is an individual and resident of California and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

15.     Plaintiff Jorge Mendoza is an individual and resident of California and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

16.     Plaintiff Seth Marshall is an individual and resident of Pennsylvania and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

17.     Plaintiff Matthew White is an individual and resident of New York and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

18.     Plaintiff Tyrell King is an individual and resident of Arkansas and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

19.     Plaintiff Kennetha Mitchell is an individual and resident of Florida and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

20.     Plaintiff Donedward White is an individual and resident of Illinois and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

21.     Plaintiff Jamal Winger is an individual and resident of Indiana and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

22.     Plaintiff Allison Poulson is an individual and resident of Indiana and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

23.     Plaintiff Robney Irving-Millentree is an individual and resident of Missouri and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

24.     Plaintiff Tracy Ellis is an individual and resident of New Jersey and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

25.     Plaintiff Thomas Parrish is an individual and resident of New York and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

26.     Plaintiff Devin Dobsch[4] is an individual and resident of Pennsylvania and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

27.     Plaintiff Joshua Smith is an individual and resident of Virginia and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

---

[4] Dobsch's name was errantly misspelled as "Drobsch" on his case's initial filing.

28.     Plaintiff Jacob Tschudy is an individual and resident of Wisconsin and worked for Defendants and was not paid for all hours worked as a result of the Kronos outage as discussed herein.

29.     Defendant PepsiCo Inc. is a North Carolina for-profit corporation with its principal executive office address at 700 Anderson Hill Road, Purchase, New York, 10577.

30.     Defendant Bottling Group, LLC is a Delaware for-profit corporation with its principal executive office address at 700 Anderson Hill Road, Purchase, New York, 10577.

31.     Defendant CB Manufacturing Company, Inc. is a Delaware for-profit corporation with its principal executive office address at 700 Anderson Hill Road, Purchase, New York, 10577.

32.     Defendant FL Transportation, Inc. is a Delaware for-profit corporation with its principal executive office address at 7701 Legacy Drive, Plano, Texas, 75024.

33.     Defendant Frito-Lay, Inc. is a Delaware for-profit corporation with its principal executive office address at 7701 Legacy Drive, Plano, Texas, 75024.

34.     Defendant Golden Grain Company is a California for-profit corporation with its principal executive office address at 700 Anderson Hill Road, Purchase, New York, 10577.

35.     Defendant Grayhawk Leasing, LLC is a Delaware for-profit corporation with its principal executive office address at 700 Anderson Hill Road, Purchase, New York, 10577.

36.     Defendant Juice Transport, Inc. is a Delaware for-profit corporation with its principal executive office address at 433 W. Van Buren Street, Suite 3N, Chicago, IL 60607.

37.     Defendant New Bern Transport Corporation is a Delaware for-profit corporation with its principal executive office address at 700 Anderson Hill Road, Purchase, New York, 10577.

38.     When suit was originally filed against New Bern Transport Corporation in *Vidaud v. PepsiCo, Inc. et al.*, the true name of New Bern Transport Corporation was not known to the *Vidaud* Plaintiffs, and they were sued under the fictitious name of "Doe #1."

39.     The *Vidaud* Plaintiffs now amend their Complaint to sue New Bern Transport Corporation in its true name.

40.     Defendant Pepsi Northwest Beverages LLC is a Delaware for-profit corporation with its principal executive office address at 3003 R.W. Johnson Blvd. Tumwater, WA 98512.

41.     Defendant Pepsi-Cola Sales & Distribution, Inc. is a Delaware for-profit corporation with its principal executive office address at 700 Anderson Hill Road, Purchase, New York, 10577.

42.     Defendant Pepsi-Cola Technical Operations, Inc. is a Delaware for-profit corporation with its principal executive office address at 700 Anderson Hill Road, Purchase, New York, 10577.

43.     Defendant Pepsi-Cola Beverage Sales LLC is a Delaware for-profit corporation with its principal executive office address at 700 Anderson Hill Road, Purchase, New York, 10577.

44.     Defendant PepsiCo Sales, Inc. is a Delaware for-profit corporation with its principal executive office address at 700 Anderson Hill Road, Purchase, New York, 10577.

45.     Defendant Quaker Manufacturing, LLC is a Delaware for-profit corporation with its principal executive office address at 700 Anderson Hill Road, Purchase, New York, 10577.

46.     Defendant Rolling Frito-Lay Sales, LP is a Delaware for-profit corporation with its principal executive office address at 7701 Legacy Drive, Plano, Texas, 75024.

47.     Defendant SVC Manufacturing, Inc. is a Delaware for-profit corporation with its principal executive office address at 700 Anderson Hill Road, Purchase, New York, 10577.

48.     Defendant New Tiger LLC is a Delaware for-profit corporation with its principal executive office address at 433 W. Van Buren Street, Suite 3N, Chicago, IL 60607.

49.     Defendant Tropicana Manufacturing, Inc. is a Delaware for-profit corporation with its principal executive office address at 433 W. Van Buren Street, Suite 3N, Chicago, IL 60607.

50.     Defendant Tropicana Products, Inc. is a Delaware for-profit corporation with its principal executive office address at 433 W. Van Buren Street, Suite 3N, Chicago, IL 60607.

51.     Defendant Tropicana Services, Inc. is a Florida for-profit corporation with its principal executive office address at 433 W. Van Buren Street, Suite 3N, Chicago, IL 60607.

52.     Defendant Naked Juice Co. of Glendora, Inc. is a California for-profit corporation with its principal executive office address at 433 W. Van Buren Street, Suite 3N, Chicago, IL 60607.

53.     The *Madriz* Plaintiffs are informed and believe and on that basis allege, that at all relevant times the *Madriz* Defendants and *Madriz* Defendants Does #1 through #50 were affiliated, and each was the principal, agent, servant, partner, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor or predecessor in interest, joint ventures, and/or joint enterprises of one or more of Defendants.

54.     The *Madriz* Defendants and *Madriz* Defendants Does #1 through #50 employed and/or jointly employed the *Madriz* Plaintiffs and members of the California Subclass.

55.     The *Madriz* Defendants and *Madriz* Defendants Does #1 through #50 are joint employers for purposes of California law.

13

56.     The *Madriz* Plaintiffs are unaware of the true names of *Madriz* Defendants Does #1 through #50, and so the *Madriz* Plaintiffs sue those Defendants under said fictitious names pursuant to California Code of Civil Procedure section 474. *Lindley v. Gen. Elec. Co.*, 780 F.2d 797, 802 (9th Cir. 1986).

57.     The *Madriz* Plaintiffs will amend this Complaint to show the true names and capacities of such fictitiously named Defendants after the same has been ascertained.

58.     Because the true names of *Madriz* Defendants Does #1 through #50 are currently unknown to them, the *Madriz* Plaintiffs refer to such Defendants in this lawsuit collectively with their non-fictitiously named joint employers as "Defendants" throughout this Complaint.

59.     The *Vidaud* Plaintiffs are informed and believe and on that basis allege, that at all relevant times the *Vidaud* Defendants and *Vidaud* Defendants Does #1 through #50 were affiliated, and each was the principal, agent, servant, partner, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor or predecessor in interest, joint ventures, and/or joint enterprises of one or more of Defendants.

60.     The *Vidaud* Defendants and *Vidaud* Defendants Does #2 through #50 employed and/or jointly employed the *Vidaud* Plaintiffs and California Subclass.

61.     The *Vidaud* Defendants and *Vidaud* Defendants Does #2 through #50 are joint employers for purposes of California law.

62.     The *Vidaud* Plaintiffs are unaware of the true names of *Vidaud* Defendants Does #1 through #50, and so the *Vidaud* Plaintiffs sue those Defendants under said fictitious names pursuant to California Code of Civil Procedure section 474. *Lindley v. Gen. Elec. Co.*, 780 F.2d 797, 802 (9th Cir. 1986).

63.     The *Vidaud* Plaintiffs will amend this Complaint to show the true names and capacities of such fictitiously named Defendants after the same has been ascertained.

64.     Because the true names of *Vidaud* Defendants Does #2 through #50 are currently unknown to them, the *Vidaud* Plaintiffs refer to such Defendants in this lawsuit collectively with their non-fictitiously named joint employers as "Defendants" throughout this Complaint.

## FACTUAL ALLEGATIONS

### Defendants' Business and Defendants' Statuses as Employers

65.     Defendant PepsiCo Inc. is a multinational firm whose "products are [used] by consumers more than one billion times a day in more than 200 countries and territories around the world."[5] PepsiCo generated $70 billion in net revenue in 2020, and owns and distributes brands such as "Lays, Doritos, Cheetos, Gatorade, Pepsi-Cola, Mountain Dew, Quaker, and SodaStream… including many iconic brands that generate more than $1 billion each in estimated annual retail sales."[6]

66.     The other named defendants are the various divisions and subsidiaries of PepsiCo, Inc.  As relevant to the claims herein, the use of Kronos by Defendants and the responses to the Kronos outage by Defendants, were materially the same as to all Defendants inasmuch as they were all the product of centralized decisions and implementing actions formulated and directed by, and the product of, PepsiCo, Inc.

67.     Defendants were the "employer" of Plaintiffs and other members of the FLSA Collective and State Classes within the meaning of the FLSA, 29 U.S.C. § 203(d), and pertinent state laws.

---

[5] https://www.pepsico.com/about/about-the-company (last accessed Jan. 28, 2022.)
[6] *Id.*

15

68.     At all times relevant herein, Defendants have jointly employed Plaintiffs and the putative FLSA Collective and State Classes members and have been employers within the meaning of Section 3(d) of the FLSA (29 U.S.C. § 203(d)) and pertinent state laws.

69.     Defendants utilize non-exempt hourly employees, including Plaintiffs and other members of the FLSA Collective and State Classes, in furtherance of their business purposes.

70.     At all times relevant, Defendants were an enterprise within the meaning of 29 U.S.C. § 203(r).

71.     At all times relevant, Defendants were an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

72.     Defendants operate and control an enterprise engaged in commerce, with annual gross volume of business exceeding $500,000.00.

73.     Defendants were each employers of Plaintiffs and other members of the FLSA Collective and State Classes inasmuch as each Defendant exercised the power to hire or fire employees; supervised and controlled the employees' work or conditions of employment; determined employees' rates and methods of payment; and maintained or were required to maintain records, including employment records.

### Defendants' Status as a "Single Employer" and "Single Enterprise"

74.     At all times relevant, Defendants were an enterprise within the meaning of 29 U.S.C. § 203(r). That is, Defendants perform related activities through unified operation and common control for a common business purpose; namely, the provision of Pepsi and related brands' products throughout the United States and internationally. Defendants were individually and jointly "employers" within the meaning of the FLSA and pertinent state law.

75.     At all times relevant, Plaintiffs and other members of the FLSA Collective and State Classes were "employees" of Defendants.

76.     Defendants are engaged in related activities, *i.e.* all activities which are necessary to the operation and maintenance of Defendants' business.

77.     Defendants provide the same or similar array of products and services.

78.     Defendants share common ownership under PepsiCo, Inc as subsidiaries and affiliates of the same.

79.     Defendants share operational control over significant aspects of the day-to-day functions of Plaintiffs and other members of the FLSA Collective and State Classes, including, as here relevant, controlling conditions of employment relative to time keeping and pay.

80.     Defendants shared control and maintenance of employment records.

81.     Defendants have shared and mutually benefitted from the work and services performed by Plaintiffs and other members of the FLSA Collective and State Classes.

82.     Defendants have not acted entirely independently of each other and have not been completely disassociated with respect to Plaintiffs and other members of the FLSA Collective and State Classes.

83.     Defendants acted directly or indirectly in the interest of each other in relation to Plaintiffs and other members of the FLSA Collective and State Classes.

84.     Defendants constitute a unified operation because they have organized the performance of their related activities so that they are an organized business system which is an economic unit directed to the accomplishment of a common business purpose.

85.     Defendants provide the same services and products to customers by using a set formula when conducting business.

86.     Part of that set formula is the deprivation of accurate and timely compensation and wage statements to their employees as outlined in this Complaint.

### Plaintiffs', the FLSA Collective's, and California, and New York Subclasses' Non-Exempt Employment Status with Defendants

87.     Defendants classify and pay Plaintiffs, as well as other members of the FLSA Collective and State Classes, as nonexempt hourly employees.

88.     At all times relevant, Plaintiffs and other members of the FLSA Collective and State Classes were employees within the meaning of 29 U.S.C. § 203(e) and pertinent state law.

89.      At all times relevant, Plaintiffs and other members of the FLSA Collective and State Classes were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 207.

### Defendants' Failure to Timely and Accurately Pay Employees Compensation

90.     The FLSA, State Labor Laws, and California and New York law required Defendants to pay their employees for all the hours they worked, including hours in excess of forty (40), for which, under the FLSA and many State laws, overtime pay was required.

91.     Plaintiffs and other members of the FLSA Collective and the State Classes frequently worked more than forty (40) hours in a single workweek.

92.     Defendants failed to pay Plaintiffs and other members of the FLSA Collective and the State Classes in a timely and accurate manner for all hours, including overtime hours, that they worked.

93.     Defendants accepted the benefit of Plaintiffs labor and work and shortchanged their hourly employees and failed to pay compensation for the regular hours worked and for all hours worked in excess of forty (40) hours per workweek in a timely and accurate manner.

94.     Defendants' unlawful time payment policies as highlighted above denied Plaintiffs and other members of the FLSA Collective and the State Classes compensable hourly compensation and overtime compensation they were entitled to be paid each pay period. Had Defendants kept accurate timekeeping and payroll records in compliance with the FLSA and Department of Labor regulations, and State laws, including but not limited to by maintaining the records in a manner that was "safe and accessible at the place or places of employment, or at one or more established central recordkeeping offices where such records are customarily maintained," 29 C.F.R. § 516.7, Plaintiffs and other members of the FLSA Collective and the State Classes would have been compensated for all hours worked and additional overtime hours during the pay period in which the work was performed.

95.     As a direct and proximate result of Defendants' failure to keep accurate timekeeping and payroll records in compliance with the FLSA and Department of Labor regulations, including but not limited to by maintaining the records in a manner that was "safe and accessible at the place or places of employment, or at one or more established central recordkeeping offices where such records are customarily maintained," 29 C.F.R. § 516.7, Defendants failed to pay all compensation due to all non-exempt employees, including at least one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours each workweek, in an accurate and timely manner. 29 U.S.C. § 207. Instead, Defendants calculated and paid wages during the Class Period by averaging the hours worked in the weeks prior to the mid-December 2021 Kronos purported cybersecurity incident. While Plaintiffs, for example, and other members of the FLSA Collective and State Classes, worked significant amounts of overtime hours during the holiday season of December, 2021 and throughout the

Class Period, Defendants have failed to pay Plaintiffs and other members of the FLSA Collective and the State Classes for all hours worked, including overtime hours. 29 U.S.C. § 207.

96.     Defendants' illegal overtime compensation pay practices, including the decision to calculate regular wages and overtime wages based on a formula that does not consider actual overtime worked, were the result of systematic and company-wide policies originating at the management level.

97.     Defendants' failure to compensate Plaintiffs and other members of the FLSA Collective and the State Classes for all hours worked, including all hours worked more than forty (40) hours per week at constitutes a knowing and willful violation of the FLSA, 29 U.S.C. § 207 and corresponding state common and statutory laws.

<u>**Defendants' Record Keeping Violations**</u>

98.     The FLSA and State Labor Laws, including California and New York law, required Defendants to maintain accurate and complete records of employees' time worked and amounts paid. For example, federal regulations require employers to make and keep payroll records showing information and data such as the employee's name, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime compensation is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment. 29 C.F.R. § 516.2.

99.     Department of Labor regulations specifically required Defendants to maintain the records in a manner that was "safe and accessible at the place or places of employment, or at one or more established central recordkeeping offices where such records are customarily

maintained." 29 C.F.R. § 516.7. To the extent that Defendants maintained the records at a central

recordkeeping office, other than in the place or places of employment, these records were

required to be available within 72 hours. *Id.*

100.    California and New York law contain similar requirements.

101.    Defendants failed to keep accurate records of hours worked. Thus, Defendants did

not record or pay all hours worked in violation of the FLSA, State Labor Laws, and California

and New York law.

### The Willfulness of Defendants' Violations

102.    Defendants knew that Plaintiffs and other members of the FLSA Collective and

State Classes were entitled to overtime compensation under federal and state law or acted in

reckless disregard for whether they were so entitled.

103.    Defendants' executive, calculated decision to pay wages by averaging the hours

worked in the weeks prior to the mid-December 2021 Kronos purported cybersecurity incident, a

policy and practice that inherently does not consider Plaintiffs' and other members of the FLSA

Collective's and State Classes' actual overtime hours worked constitutes a knowing and willful

violation of the FLSA and state law.

104.    In addition, by denying Plaintiffs and other members of the FLSA Collective and

State Classes overtime compensation as required by the FLSA, State Labor Laws, and California

and New York law, Defendants' acts were not based upon good faith. Through legal counsel as

well as industry experience and custom, Defendants possessed ample access to the regulations

and statutory provisions requiring the proper and prompt payment of overtime compensation

under the provision of laws recited in this Complaint, but either failed to seek out such

information and guidance or did seek out the information and guidance but failed to adhere to the

principles of compliance as required. Defendants therefore knew about the overtime compensation requirements of the FLSA and state law or acted in reckless disregard as to Defendants' obligations under the FLSA and state law.

105.    The above payroll practices resulted in knowing and willful overtime violations of the FLSA, 29 U.S.C. §§ 201-219; and state law.

## COLLECTIVE/CLASS ACTION ALLEGATIONS
### (FLSA Collective and State Labor Law Class)

106.    Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

107.    Plaintiffs bring this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), and on behalf themselves, and as to the State Labor Law Class, as a class action for claims under the State Labor Laws pursuant to Fed. R. Civ. P. 23.

108.    The FLSA claims may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b). The claims under the State Labor Laws may be pursued by all similarly situated persons who choose not to opt-out of the State Labor Law Class pursuant to Fed. R. Civ. P. 23.

109.    The FLSA Collective and National Class consists of:

All current and former employees of Defendants in the United States during the seventeen weekly pay periods between December 5, 2021, and April 8, 2022, who were impacted by the Kronos Outage. An employee was impacted by the Kronos Outage if that employee received an inaccurate pay stub or inaccurate compensation at any time during the Class Period, regardless of whether that employee's compensation paid during the Kronos Outage as compared to compensation owed for the Kronos Outage time period resulted in a net positive (overpayment), net neutral, or net negative (underpayment) to that employee.

110.    The members of the FLSA Collective are "similarly situated" with respect to Defendants' FLSA and State Law violations in that all were non-exempt employees of Defendants, all were unlawfully impacted by the Kronos Outage, and all have the same claims

against Defendants for inaccurate compensation and overtime compensation as well as for inaccurate wage statements, liquidated damages, attorneys' fees, and costs.

111.    Conditional certification of the FLSA Collective pursuant to 29 U.S.C. § 216(b) is proper and necessary so that such persons may be sent a Court-authorized notice informing them of the pendency of this action and giving them the opportunity to "opt in."

112.    The FLSA Collective (and the National Class) consists of 69,809 employees. Such employees are readily identifiable through the payroll records Defendants have maintained, and were required to maintain, pursuant to the FLSA.

113.    Furthermore, there is a well-defined community of interest in the questions of law and fact affecting the members of the National Class. The questions of law and fact common to the members of the National Class predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

> Whether Defendants' conduct as described above violates State Labor Laws requiring the timely payment of hourly and overtime compensation; and

> What amount of damages Plaintiffs and the members of the National Class are entitled to due to Defendants' violations of State Labor Laws.

114.    Plaintiffs' claims are typical of the claims of members of the National Class. Plaintiffs, and members of the National Class, have sustained damages arising out of Defendants' failure to timely and accurately pay them due to the Kronos Outage in violation of State Labor Laws.

115.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation as a class action.

## CLASS ACTION ALLEGATIONS
### (California and New York Subclasses)

### California Subclass

116.     Plaintiffs Madriz, Ulloa, Vidaud, and Mendoza (the "California Plaintiffs")

incorporate by reference the foregoing allegations as if fully rewritten herein.

117.     The California Plaintiffs also bring this case as a class action pursuant to Fed. R.

Civ. P. 23 on behalf of themselves and other members of a subclass of members of the National

Class who assert claims under the labor laws of the State of California (the "California

Subclass"), defined as:

> All current and former employees of Defendants in California during the
> seventeen weekly pay periods between December 5, 2021, and April 8, 2022, who
> were impacted by the Kronos Outage.  An employee was impacted by the Kronos
> Outage if that employee received an inaccurate pay stub or inaccurate
> compensation at any time during the Class Period, regardless of whether that
> employee's compensation paid during the Kronos Outage as compared to
> compensation owed for the Kronos Outage time period resulted in a net positive
> (overpayment), net neutral, or net negative (underpayment) to that employee.

118.     The California Subclass is so numerous that joinder of all class members is

impracticable because there are 7,762 members of this subclass.  Their identities are

ascertainable from the payroll and personnel records Defendants have maintained, and were

required to maintain, pursuant to the FLSA and California law.

119.     There are questions of law or fact common to the members of the California

Subclass, including but not limited to:

120.     Whether Defendants' conduct as described above violated California Labor

Laws requiring the timely payment of hourly and overtime compensation;

121.     Whether Defendants' conduct as described above violated California Labor

Laws requiring that accurate wage statements be provided in a timely manner;

122.    What amount of amount of damages and penalties the California Plaintiffs and the members of the California Subclass are entitled to due to Defendants' violations of California Labor Laws.

123.    The California Plaintiffs' claims are typical of the claims of members of the California Subclass as they arise out of the same uniform course of conduct by Defendants, and are based on the same legal theories, as the claims of the California Subclass members.

124.    The California Plaintiffs will fairly and adequately protect the interests of the California Subclass. The interest of the California Plaintiffs are not antagonistic to, but rather are in unison with, the interests of the members of the California Subclass. Plaintiffs' counsel have broad experience in handling class action litigation, including wage-and-hour litigation, and are fully qualified to prosecute the claims of the California Subclass in this case.

125.    The questions of law or fact that are common to the California Subclass predominate over any questions affecting only individual members. The common questions described above, will determine Defendants' liability to the California Plaintiffs and members of the California Subclass and the amount of damages and penalties they are owed and will predominate over any questions affecting only individual California Subclass members.

126.    Certifying the California Subclass is superior to other available methods for the fair and efficient adjudication of the claims of all the members of the California Subclass. Requiring California Subclass members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many California Subclass members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually.

Certification of this Subclass pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all subclass members with the efficiencies of class litigation.

**New York Subclass**

127.     Plaintiffs Marshall, Matthew White, and Parrish (the "New York Plaintiffs") incorporate by reference the foregoing allegations set forth in paragraphs 1 through 104, as if fully rewritten herein.

128.      The New York Plaintiffs also bring this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and other members of a subclass of members of the National Class who assert claims under the labor laws of the State of New York (the "New York Subclass"), defined as:

> All current and former employees of Defendants in New York during the seventeen weekly pay periods between December 5, 2021, and April 8, 2022, who were impacted by the Kronos Outage.  An employee was impacted by the Kronos Outage if that employee received an inaccurate pay stub or inaccurate compensation at any time during the Class Period, regardless of whether that employee's compensation paid during the Kronos Outage as compared to compensation owed for the Kronos Outage time period resulted in a net positive (overpayment), net neutral, or net negative (underpayment) to that employee.

129.     The New York Subclass is so numerous that joinder of all class members is impracticable because there are 2,766 members of this subclass.  Their identities are ascertainable from the payroll and personnel records Defendants have maintained, and were required to maintain, pursuant to the FLSA and California law.

130.     There are questions of law or fact common to the members of the New York Subclass, including but not limited to:

131.     Whether Defendants' conduct as described above violated New York Labor Laws requiring the timely payment of hourly and overtime compensation;

132. Whether Defendants' conduct as described above violated New York Labor Laws requiring that accurate wage statements be provided in a timely manner;

133. What amount of amount of damages and penalties the New York Plaintiffs and the members of the New York Subclass are entitled to due to Defendants' violations of New York Labor Laws.

134. The New York Plaintiffs' claims are typical of the claims of members of the New York Subclass as they arise out of the same uniform course of conduct by Defendants, and are based on the same legal theories, as the claims of the New York Subclass members.

135. The New York Plaintiffs will fairly and adequately protect the interests of the New York Subclass. The interest of the New York Plaintiffs are not antagonistic to, but rather are in unison with, the interests of the members of the New York Subclass. Plaintiffs' counsel have broad experience in handling class action litigation, including wage-and-hour litigation, and are fully qualified to prosecute the claims of the New York Subclass in this case.

136. The questions of law or fact that are common to the New York Subclass predominate over any questions affecting only individual members. The common questions described above, will determine Defendants' liability to the New York Plaintiffs and members of the New York Subclass and the amount of damages and penalties they are owed and will predominate over any questions affecting only individual New York Subclass members.

137. Certifying the New York Subclass is superior to other available methods for the fair and efficient adjudication of the claims of all the members of the New York Subclass. Requiring New York Subclass members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many New York Subclass members' claims are sufficiently small that they would be

reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this Subclass pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all subclass members with the efficiencies of class litigation.

## COUNT ONE
### (FLSA Wage Payment Violations)

138.    Plaintiffs incorporate by reference the foregoing allegations of paragraphs 1 to 136 as if fully rewritten herein.

139.    Plaintiffs bring this claim for violation of the FLSA's requirements for the timely payment of hourly and overtime compensation on behalf of themselves and members of the FLSA Collective who may join this case pursuant to 29 U.S.C. § 216(b).

140.    The FLSA requires that employers pay their employees their wages, including any earned overtime, on the regular payday for the pay period in which they worked those hours.

141.    The FLSA also requires that "non-exempt" employees receive overtime compensation of "not less than one and one-half times" the employees' "regular rate" of pay for all hours worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207(a)(1).

142.    Plaintiffs and other members of the FLSA Collective should have been paid their hourly wages and overtime wages each regular pay day.

143.    Defendants, however, failed to do so.

144.    Defendants knowingly, willfully, and/or in reckless disregard carried out an illegal pattern and practice of failing to pay Plaintiffs and other members of the FLSA Collective their due compensation each regular pay day. Defendants' failure to pay their due hourly and overtime compensation to Plaintiffs and other members of the FLSA Collective was neither reasonable, nor was the decision not to pay overtime made in good faith. By engaging in these

practices, Defendants willfully violated the FLSA and regulations thereunder that have the force of law.

145.    As a result of Defendants' violations of the FLSA, Plaintiffs and other members of the FLSA Collective were injured in that they did not receive wages due to them in a timely manner.  29 U.S.C. § 216(b) entitles Plaintiffs and other members of the FLSA Collective to an award of "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) further provides that "[t]he court … shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

## COUNT TWO
### (State Law Wage Payment Violations)

146.    Plaintiffs incorporate by reference the foregoing allegations of paragraphs 1 through 136 as if fully rewritten herein.

147.    Defendants' failure to timely pay Plaintiffs, and members of the National Class, compensation for all hours worked, including overtime hours, for work performed beyond the 40-hour workweek is a violation of the State Labor Laws.

148.    Due to Defendants' violations of the State Labor Laws, Plaintiffs, on behalf of themselves and members of the State Class, are entitled to recover from Defendants unpaid overtime compensation, all applicable statutory damages, reasonable attorneys' fees and costs and disbursements of this action, pursuant to the State Labor Laws.

## COUNT THREE
### (California Waiting Time Penalties)
### (Brought on Behalf of the California Subclass)

149.    The California Plaintiffs incorporate by reference the foregoing allegations of paragraphs 1 through 125, as if fully rewritten herein.

150.     At all relevant times, Defendants were required to pay the California Plaintiffs and the California Subclass all wages owed in a timely fashion at the end of employment pursuant to California Labor Code sections 201 to 204.

151.     As a result of Defendants' alleged California Labor Code violations, Defendants failed to pay the California Plaintiffs and the California Subclass their final wages pursuant to California Labor Code sections 201 to 204, and accordingly Defendants owe waiting time penalties pursuant to California Labor Code section 203.

152.     The conduct of Defendants, in violation of the California Plaintiffs and the California Subclass members' rights was willful and was undertaken by the agents, employees, and managers of Defendants.

153.     Defendants' willful failure to provide the California Plaintiffs and the California Subclass the wages due and owing them upon separation from employment results in a continuation of wages up to 30 days from the time the wages were due.

154.     Therefore, the California Plaintiffs Madriz, Ulloa, Vidaud, Mendoza and the California Subclass who have separated from employment are entitled to compensation pursuant to California Labor Code section 203.

## COUNT FOUR
### (Failure to Pay Wages Under California Law)
### (Brought on Behalf of the California Subclass)

155.     The California Plaintiffs incorporate by reference the foregoing allegations of paragraphs 1 through 125, as if fully rewritten herein.

156.     The California Labor Code requires that all employees, including the California Plaintiffs and the members of the California Subclass, receive 1.5x their hourly rate as overtime

premium compensation for hours worked over eight in one day. CAL. LAB. CODE § 510 (2017); IWC Wage Orders #1-2001 through #17-2001.

157.    Despite working over 8 hours a day as part of their normal and regular shift, the California Plaintiffs and the California Subclass did not receive proper overtime compensation for all hours worked over 8 in one day.

158.    The California Labor Code also requires that all employees, including the California Plaintiffs and the California Subclass, receive 2x the overtime premium compensation for hours worked over 12 in one day, in the seventh day of a workweek. CAL. LAB. CODE § 510, 551-52 (2017); IWC Wage Orders #1-2001 through #17-2001.

159.    Although the California Plaintiffs and the California Subclass regularly worked seven days a week, for at least 12 hours a day, they did not receive the "double time" compensation required by California law for all hours over eight worked on the seventh day.

160.    This pattern, practice, and uniform administration of corporate policy regarding illegal employee compensation is unlawful and entitles the California Plaintiffs and the California Subclass to recover the unpaid balance of the full amount of overtime wages owing, including liquidated damages, interest, attorneys' fees, and costs of suit pursuant to California Labor Code section 1194.

## COUNT FIVE
### (Violations of California's Wage Statement and Record Keeping Requirements)
### (Brought on Behalf of the California Subclass)

161.    The California Plaintiffs incorporate by reference the foregoing allegations of paragraphs 1 through 125, as if fully rewritten herein.

162.   California Labor Code section 226(a) requires Defendants to provide an accurate itemized wage statement each time wages are paid showing, *inter alia*, showing (1) gross wages earned, (2) total hours worked by the employee.

163.   California Labor Code section 226(b) requires Defendants to keep accurate records regarding the information required by subsection (a) so that it can provide that information to the California Plaintiffs and Subclass with their wage payment.

164.   Defendants failed to provide accurate wage statements to the California Plaintiffs and California Subclass with their wages and did not maintain accurate records of the California Plaintiffs and Subclass's daily hours, gross wages earned, net wages earned, and the applicable hourly rates during the Class Period.

165.   This pattern, practice, and uniform administration of corporate policy is unlawful and entitles the California Plaintiffs  and the California Subclass to recover all damages and penalties available by law, including interest, penalties, attorneys' fees, and costs of suit. CAL. LAB. CODE § 226(e).

## COUNT SIX
### (Violation of California Unfair Competition Law)
### (Brought on Behalf of the California Subclass)

166.   The California Plaintiffs incorporate by reference the foregoing allegations of paragraphs 1 through 125 as if fully rewritten herein.

167.   Defendants have engaged, and continue to engage, in unfair and unlawful business practices in California by practicing, employing, and utilizing the employment practices outlined above by knowingly denying employees: (1) overtime wages required by California law; (2) accurate wage statements; and (3) waiting time penalties.

168.    As a result of Defendants' failure to comply with California law, Defendants have also violated the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, et seq., which prohibits unfair competition by prohibiting any unlawful or unfair business actions or practices.

169.    The relevant acts by Defendants occurred within the four years preceding the filing of this action.

170.    On information and belief, Defendants have engaged in unlawful, deceptive, and unfair business practices, pursuant to California's Business and Professions Code section 17200, et seq., including those set forth above, depriving the California Plaintiffs and the California Subclass of minimum working condition standards and conditions under California law and IWC Wage Orders as set forth above.

171.    The California Plaintiffs and the California Subclass are entitled to restitution for at least the following: restitution for unpaid overtime wages and unpaid California Labor Code § 203 continuation wages.

172.    Defendants are also liable for fees and costs pursuant to California Code of Civil Procedure 1021.5 and other applicable law.

### COUNT SEVEN
### (Civil Penalties Under PAGA)
**(Brought by** the California Plaintiffs, as representatives of the LWDA, **on Behalf of the California Subclass)**

173.    The California Plaintiffs incorporate by reference the foregoing allegations of paragraphs 1 through 125 and 148 through 171, as if fully rewritten herein.

174.    The California Plaintiffs and the California Subclass are aggrieved employees within the meaning of California Labor Code Section 2699.

175. As aggrieved employees, the California Plaintiffs, as representatives of the California Labor and Workforce Development Agency (LWDA), on behalf of the California Subclass, seek to recover civil penalties against Defendants pursuant to the Private Attorneys General Act of 2004 (PAGA), CAL. LAB. CODE §§ 2698 *et seq.*

176. Defendants have knowingly and intentionally violated the California Labor Code and IWC Wage Orders, including by:

    a. Failing to pay wages (CAL. LAB. CODE §§ 510, 1194.5; IWC Wage Orders #1-2001 through #17-2001);

    b. Violating record keeping requirements (CAL. LAB. CODE § 226);

    c. Unlawfully collecting, receiving, or withholding wages (CAL. LAB. CODE §§ 221, 225.5);

    d. Failing to pay wages promptly following termination of employment, or when due and payable (CAL. LAB. CODE § 203).

177. The civil penalties sought by the California Plaintiffs, on behalf of themselves and the California Subclass, include the recovery of amounts specified in the respective sections of the California Labor Code, and if not specifically provided, those penalties under section 2699(f).

178. The California Plaintiffs, on behalf of themselves and the California Subclass, seek the full amounts sufficient to recover unpaid wages, other damages, and necessary expenditures or losses incurred by the California Plaintiffs and the California Subclass pursuant to California Labor Code sections 210, 225.5, 226.3, 226.8, 558(a), 1197(a), 2802, and 2699.

179. The California Plaintiffs, on behalf of themselves and the California Subclass, will allege any additional violations of the California Labor Code and IWC Wage Orders as may be disclosed in discovery and as a result of additional investigation that may be pursued in this action.

180.     The California Plaintiffs provided timely notice to Defendants of its California Labor Code and IWC Wage Orders violations.

181.     On the same date, notice of these California Labor Code and IWC Wage Orders violations was provided to the LWDA, as required by PAGA.

182.     The notice to Defendants and the LWDA advised each of them of the intent to prosecute a private enforcement action to assess and recover civil penalties under PAGA if the LWDA declines to investigate or prosecute the asserted California Labor Code and IWC Wage Orders violations.

183.     If the LWDA declines to investigate or prosecute, the California Plaintiffs and the California Subclass will pursue their PAGA claims in the course of this action.

184.     The California Plaintiffs have had to retain counsel to file this action to protect the interests of themselves and the California Subclass and to assess and collect the civil penalties owed by Defendants to themselves and the California Subclass.

185.     The California Plaintiffs, on behalf of the LWDA, have incurred attorneys' fees and costs in prosecuting this action to recover under PAGA for themselves and the California Subclass.

**COUNT EIGHT**
**(Failure to Pay Wages In a Timely Manner )**
**(Brought on Behalf of the New York Subclass)**

186.     The New York Plaintiffs incorporate by reference the foregoing allegations of paragraphs 1 through 114 and 126 through 136, as if fully rewritten herein.

187.     Pursuant to the New York Labor Law, each employer shall pay all nonexempt employees for all hours worked, and one and one-half times the regular rate of pay for all hours worked over forty (40) per workweek.

188.    The New York Plaintiffs and the New York Subclass are non-exempt employees entitled to pay for all hours worked and overtime compensation for all hours worked in excess of forty (40) per workweek.

189.    The New York Plaintiffs and the New York Subclass did not receive accurate or timely hourly compensation and overtime compensation from Defendants during the Kronos outage period that reflected the actual hours they worked in each pay period.

190.    Defendants have failed to compensate New York Plaintiffs and the New York Subclass for all hours and overtime hours they worked during the outage period, as required by the applicable provisions of the New York Wage Acts.

191.    Pursuant to the New York Wage Acts, employers, such as Defendants, who fail to pay an employee wage in conformance with the law or to pay the proper amount of pay promptly, shall be liable to the employee for the wages or expenses that were not paid, liquidated damages equal to the full amount of wages owed, pre-judgment interest at the annual rate of 9 percent, court costs, and attorneys' fees incurred in recovering the unpaid wages.

192.    There is no bona fide dispute that the New York Plaintiffs and the New York Subclass were not timely or accurately paid the wages and overtime wages they were owed for the work they performed for Defendants including the hours they worked in excess of 40 hours a week and for which they were not compensated.

193.    As a direct and proximate result of Defendants' unlawful conduct, the New York Plaintiffs and the New York Subclass have suffered a loss of income and other damages.

## COUNT EIGHT
### (Failure to Provide Accurate Wage Statements)
### (Brought on Behalf of the New York Subclass)

194.     The New York Plaintiffs incorporate by reference the foregoing allegations of paragraphs 1 through 114 and 126 through 136, as if fully rewritten herein.

195.     New York Labor Law requires every employer to furnish each employee with a statement with every payment of wages, listing, among other things, gross wages deductions; net wages. The number of regular hours worked and number of overtime hours worked.  Section 195(3) of the New York Labor Law.

196.     Defendants failed to provide wage statements that complied with this Statute.

197.     As a result, the New York Plaintiffs are entitled to damages of two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees.  New York Labor Law Section 198 (1-d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

A.     Conditionally certify this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b) as to the FLSA Collective and direct that Court-approved notice be issued to similarly-situated persons informing them of this action and enabling them to opt in;

B.     Certify this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Plaintiffs and other members of the National Class, and California and New York Subclasses;

C.     Enter judgment against Defendants, jointly and severally, and in favor of Plaintiffs, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the members of the National Class, and California and New York Subclasses;

D.     Award compensatory damages to Plaintiffs, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the members of the National Class, and California and New York Subclasses in the amount of their unpaid regular time

and overtime wages, as well as liquidated damages in an equal amount;

E.     Award Plaintiffs and other members of the FLSA Collective and National Class, and California and New York Subclasses compensatory damages, prejudgment interest, costs and attorneys' fees incurred in prosecuting this action;

F.     Award the California Plaintiffs and the members of the California Subclass the damages and penalties available under California law;

G.     Award the New York Plaintiffs and the members of the New York Subclass the damages and statutory prejudgment interest available under New York Labor laws; and

H.     Award Plaintiffs and other members of the FLSA Collective and National Class, and California and New York Subclasses such further relief as the Court deems equitable and just.

Respectfully submitted,

**KLAFTER LESSER LLP**
    */s/ Seth R. Lesser*
Seth R. Lesser Bar No. SL5560
Christopher M. Timmel Bar No. CT9831
Two International Drive, Suite 350
Rye Brook, NY 10573
Telephone: (914) 934-9200
E-mail: seth@klafterlesser.com
E-mail: christopher.timmel@klafterlesser.com

**SCOTT & WINTERS LAW FIRM, LLC**
    */s/ Ryan A. Winters*
Joseph F. Scott
(*admitted pro hac vice*)
Ryan A. Winters
(*admitted pro hac vice*)
Kevin M. McDermott II
(*admitted pro hac vice*)
The Caxton Building
812 Huron Rd. E., Suite 490
Cleveland, OH 44115
Telephone: 216-912-2221
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com
kmcdermott@ohiowagelawyers.com

**PARMET PC**

38

   /s/ Matthew S. Parmet
Matthew S. Parmet
(*admitted pro hac vice*)
3 Riverway, Ste. 1910
Houston, TX 77056
Telephone: 713-999-5228
matt@parmet.law

**MORGAN & MORGAN, P.A.**
   /s/ Andrew R. Frisch
Andrew R. Frisch
8151 Peters Road, Ste. 4000
Plantation, FL 33324
Telephone: 954-318-0268
AFrisch@forthepeople.com

*Attorneys for Plaintiffs, Proposed FLSA Collective, and Proposed Fed. R. Civ. P. 23 Class and Subclasses*

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

*s/Seth R. Lesser*
Seth R. Lesser SL-5560

*Exhibit D*

## NOTICE OF SETTLEMENT CONCERNING PEPSICO AND TROPICANA EMPLOYEE CLAIMS ARISING FROM THE KRONOS OUTAGE

*A Court has authorized this Notice. This is not a solicitation from a lawyer*

### SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS CLASS AND COLLECTIVE ACTION SETTLEMENT

The purpose of this Notice is to advise you of a settlement that has been reached in a class and collective action on behalf of all persons who were employed in the United States by PepsiCo, Inc. ("PepsiCo"), New Tiger LLC ("New Tiger"), and their various respective divisions and subsidiaries (collectively, "PepsiCo Companies"), pertaining to their inability to timely or accurately pay these employees for all hours worked during the seventeen pay periods between December 5, 2021 and April 8, 2022 due to their payroll provider, the Ultimate Kronos Group ("Kronos") experiencing a cybersecurity incident that began on December 11, 2021 through February 12, 2022 (the "Kronos Outage"). The case is entitled *Stevens et al. v. PepsiCo. Inc. et al.*, Case No. 7-22-cv-00802-NSR.and is pending in the United States District Court for the Southern District of New York, White Plains Division (the "Court"), along with numerous other cases which were originally filed in other federal courts and have been consolidated with the *Stevens* case.

**Whether you act or not, your legal rights are affected by this proposed settlement. Your rights and options – and the deadlines to exercise them – are explained in this Notice. Please read this Notice carefully in its entirety.**

## Summary of Your Legal Rights and Options in this Settlement

| | |
|---|---|
| **Do Nothing** | You will be paid your share of the settlement which will be calculated as described in Section 4 of this Notice |
| **Exclude Yourself** | Get no payment. This is the only option that allows you to pursue your own claims or be part of any other lawsuit against the Defendants that asserts any claims relating to or arising out of the Kronos Outage. See Section 6 of this Notice. |
| **Object** | So long as you have not excluded yourself, write to the Court about why you don't like the settlement and do not want it approved. To do so, you must act by [45 days after mailing], 2022. See Section 12 of this Notice. |
| **Go to a Hearing** | Ask to speak in Court about the fairness of the settlement, or any part of it, that will be held on _____, 2022. See Sections 14 – 16 of this Notice. |

## BASIC INFORMATION

| 1. | **Why did I get this Notice?** |

The PepsiCo Companies' records reflect that you were an employee of PepsiCo or New Tiger, or one of their various divisions or subsidiaries and were not timely or accurately paid for all hours worked during the seventeen pay periods between December 5, 2021 and April 8, 2022 due to the Kronos Outage.

The Court approved this Notice because you have a right to know about a proposed settlement of this lawsuit, which the Court has preliminarily approved, and about all of your options, before the Court decides whether to grant final approval of the settlement. If the Court approves and issues a final order approving the settlement and after appeals, if any, are resolved, the Settlement Administrator will make the payments to you that the settlement allows.

| 2. | **What is The Lawsuit About?** |

This lawsuit is about the alleged failure of PepsiCo, New Tiger, and their various respective divisions and subsidiaries to timely or accurately pay their non-exempt employees in the United States for all hours worked during the pay periods between December 5, 2021 and April 8, 2022, due to the Kronos Outage under the federal Fair Labor Standards Act ("FLSA") and applicable wage and hour-related state laws. The lawsuit also concerns claims for pertinent statutory penalties arising under various state laws during that same time period.

The persons suing in this lawsuit—Emanuele Stevens, Moises Madriz, Rodney Ulloa, Ricardo Vidaud, Jorge Mendoza, Seth Marshall, Matthew White, Tyrell King, Kennetha Mitchell, Donedward White, Jamal Winger, Allison Poulson, Rodney Irving-Millentree, Tracy Ellis, Thomas Parrish, Devin Drobsch, Joshua Smith, and Jacob Tschudy—who are all non-exempt employees of PepsiCo, New Tiger or one of their respective divisions or subsidiaries, are called the Named Plaintiffs and the companies being sued—PepsiCo, New Tiger and all their respective divisions and subsidiaries listed in Exhibit A to this Notice—are called the Defendants. The Named Plaintiffs have been appointed by the Court as "Class Representatives."

Plaintiffs brought this lawsuit to ensure that all Defendants' non-exempt employees in the United States who were impacted by the Kronos Outage were paid all wages owed and to also recover additional damages which each such employee may be entitled to under federal and state wage and hour laws.

Plaintiffs have brought this lawsuit on behalf of a collective to recover damages available under the federal labor laws (the "FLSA Collective") and on behalf of a class to recover damages and/or penalties available under state labor laws (the "National Class"), consisting of all current and former employees of any Defendant in the United States during the seventeen weekly pay periods between December 5, 2021 and April 8, 2022, who were impacted by the Kronos Outage (together, the "FLSA Collective/National Class"). For purposes of the Settlement, an employee has been impacted by the Kronos Outage if that employee received an inaccurate pay stub or inaccurate compensation at any time during the Class Period, regardless of whether that employee's compensation paid during the the the

Kronos Outage as compared to compensation owed for the Kronos Outage timeperiod resulted in a net positive (overpayment), net neutral, or net negative (underpayment) to that employee.

Plaintiffs have also brought this lawsuit on behalf of a subclass consisting of those members of the National Class who worked for a Defendant in New York and a subclass consisting of those members of the National Class who worked for a Defendant in California to recover pertinent statutory penalties permissible under those state laws (together, the "State Law Subclasses").

Defendants deny the Named Plaintiffs' claims in this case, including Named Plaintiffs' contention that (i) Defendants knowingly, willfully, or recklessly disregarded any of their wage payment obligations; and (ii) Defendants failed to appropriately compensate the collective/class members. Defendants alsodeny the claims of violation of other pertinent state laws of the FLSA Collective/National Class and State Law Subclasses.

### 3. Why is this a class and collective action?

In a class action, one or more people called Class Representatives sue on behalf of all people who have similar claims. All these people are "Class Members," and grouped together are a "Class." A court has to determine if the case is appropriate for class treatment, and if the Court does, that one case will resolve the common issues for all Class Members, except for those who exclude themselves from the Class. The Defendants have agreed that this case should proceed as a class action for settlement purposes only.

Similarly, in a collective action, plaintiffs sue on behalf of employees of a company who are "similarly situated." The difference from a class action is that in order to be part of any collective determined by a court to be appropriate, each similarly situated employee must affirmatively join the action by opting in, and is not a member of the collective until they do so. A collective action is the only way for a group of similarly situated employees to pursue claims under the federal labor laws.

The Court has preliminarily certified the National Class and State Law Subclasses and conditionally certified the FLSA Collective.

### THE SETTLEMENT BENEFITS – WHAT YOU GET

### 4. What does the Settlement provide for me?

On May 6, 2022, in order to provide recompense most expeditiously to the members of the National Class, Defendants made payments of approximately $23.9 million representing, pursuant to analysis undertaken by Defendants in conjunction with third-party consultant Ernst & Young and which has been shared with Plaintiffs' Counsel, the net unpaid compensation Defendants believe was owed to the members of the FLSA Collective/National Class (the "May 6 Payment").

With respect to the May 6 Payment, the Settlement provides that every member of the FLSA Collective/National Class will have an opportunity to dispute the accuracy of the amount of their individual May 6 Payment. Specifically, individual National Class members will have up to 90 days from the Court's preliminary approval of the Settlement to present any challenge. Named Plaintiffs' counsel (listed in Section 9 below) are available to aid you should you have questions or concerns

about the amount of your payment, or, specifically, wish to challenge it. Should a Defendant and any FLSA Collective/National Class member fail to agree upon an amount of their net underpayment through the internal reconciliation process, the Parties have agreed to have such disputes with respect to their May 6 Payment be resolved by a neutral acceptable to both the National Class member and the applicable Defendant.

If the Settlement is given final approval by the Court ("Final Approval") and any appeals of such a determination are resolved in favor of the settlement Final Approval, in addition to the May 6 Payment, you will also receive a share of settlement amount of $12,750,000.00 (the "Settlement Payment"), which Defendants have agreed to pay to settle this lawsuit.

Defendants have also agreed to pay all costs of Settlement Administration.

<u>Calculation of Individual Settlement Payments</u>

The settlement provides that the Net Settlement Fund (as defined in Section 11 below) will be allocated among the following groups:

1. FLSA Collective/National Class Members who were net underpaid by at least $1 (65.3% of the Net Settlement Fund);

2. FLSA Collective/National Class Members who were net overpaid or net neutral (the phrase "net neutral includes those individuals who were net underpaid between $.01 and $.99) (9 % of the Net Settlement Fund);

3. California State Law Subclass Members (18.7 % of the Net Settlement Fund);

4. New York State Law Subclass Members (7 % of the Net Settlement Fund).

GROUP 1 - Each individual FLSA Collective/National Class member in group (1) will receive payment representing their pro-rata share of the amount allocated to group (1), which share shall be determined by dividing the amount of their net underpayment by $23,896,550.00, which is the amount of all net underpayments.

GROUP 2 - Each individual FLSA Collective/National Class member in group (2) will receive payment of $25.00. Members in group (2) did not incur any net underpayment of wages but did suffer the inconvenience of inaccurate wage statements.

GROUP 3 - Each individual State Law Subclass member in group (3) will receive payment as a member of FLSA Collective/National Class group (1) or group (2) as applicable, in addition to their applicable share of the amount allocated to group (3). The applicable share of the individual State Law Subclass members in group (3) shall be determined as follows: (i) group (3) members who were underpaid at least once during the Kronos Outage will receive a pro-rata share determined by dividing the number of underpaid pay periods experienced by the employee by the number of unpaid pay periods by all members of group (3) who were underpaid at least once during the Kronos Outage; (ii) for all remainining members of group (3), as they did not suffer any underpayment of wages but did suffer the inconvenience of inaccurate wage statements, they will receive payment of $25.00.

GROUP 4 - Each individual State Law Subclass member in group (4) will receive payment as a member of FLSA Collective/National Class group (1) or group (2), as applicable, in addition to their applicable share of the amount allocated to group (4). The applicable share of the individual State Law Subclass members in group (4) shall be determined as follows: (i) group (4) members who were underpaid at least once during the Kronos Outage will receive a pro-rata share determined by dividing the number of underpaid pay periods experienced by the employee by the number of unpaid pay periods by all members of group (4) who were underpaid at least once during the Kronos Outage; (ii) for all remaining members of group (4), as they did not suffer any underpayment of wages but did suffer the inconvenience of inaccurate wage statements, they will receive payment of $25.00.

### 5. What am I giving up to get a payment or stay in the Class?

You will be releasing certain claims.

a.      Upon the Final Approval of the Settlement, all FLSA Collective/National Class Members and State Law Subclass Members who cash the checks sent to them by the Settlement Administrator shall be deemed to be members of the Collective and will fully, forever, irrevocably and unconditionally release, remise, and discharge Defendants from any and all claims under the Federal Labor Standards Act, 29 U.S.C. §§ 201, *et seq.,* relating to or arising out the Kronos Outage, including, without limitations, all FLSA claims for unpaid wages (whether minimum wages, hourly wages, or overtime wages), failure to timely pay wages, failure to record hours worked, paystub requirements, reimbursement, and all related claims for statutory damages or penalties, interest, liquidated damages, attorneys' fees, costs, expenses, and all other such amounts.

b.      Upon Final Approval of the Settlement, all National Class Members, including those State Law Subclass Members who are or were employed in New York and California, who do not submit a timely and valid request for exclusion from this lawsuit shall be deemed to fully, forever, irrevocably and unconditionally release, remise, and discharge Defendants from any and all claims under state laws relating to or arising out the Kronos Outage, including, without limitations, all state and local claims for unpaid wages (whether minimum wages, hourly wages, or overtime), failure to timely pay wages, failure to record hours worked, paystub requirements, reimbursement, and all related claims for statutory damages or penalties, interest, liquidated damages, attorneys' fees, costs, expenses, and all other such amounts.

### EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want a payment or other benefits from this settlement and you want to keep the right to sue or continue to sue any Defendant on your own about any of the subjects or issues listed in the paragraph above, then you must take steps to exclude yourself – sometimes referred to as "opting out" of the class.

### 6. How do I opt-out of the class?

To exclude yourself from the National Class and/or the State Law Subclasses, you must send a letter to the Settlement Administrator listed below, by mail (first-class postage pre-paid) saying that you want to be excluded from the National Class and/or the State Law Subclasses in *Stevens et al. v. PepsiCo. Inc. et al.,* Case No. 7-22-cv-00802, Case No. 7:22-CV-00802-NSR. Be sure to include your

name, address, and signature. You must mail your exclusion request so that it is postmarked no later than [45 days after mailing notice]_____, 2022 to:

**Settlement Administrator**

_____

_____

### 7. If I don't exclude myself, can I sue any Defendant for the same thing later?

No. Unless you exclude yourself, you give up any right to sue any Defendant for the released claims described in Section 5.b. If you cash your check, you give up any right to sue any Defendant for the released claims described in 5.a above. If you have a pending lawsuit concerning the Kronos Outage, speak to your lawyer in that case immediately. You must exclude yourself from the National Class—or the State Law Subclasses if you worked in New York or California during the Kronos outage time period—to continue your own lawsuit.

### 8. If I exclude myself, can I get money from this settlement?

No. If you exclude yourself, you will not receive any money from this settlement or any other benefits that this settlement provides.

### THE LAWYERS REPRESENTING YOU

### 9. Do I have a lawyer in this case?

The Court has appointed the law firms of Klafter Lesser LLP, Scott & Winters Law Firm, LLC, Parmet PC, and Morgan & Morgan, P.A. to represent you and other FLSA Collective/National Class Members and State Law Subclass Members. These lawyers have been appointed by the Court as "Class Counsel." You will not be charged individually for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 10. How will the lawyers be paid?

As provided by the Settlement, Class Counsel will ask the Court to approve a payment out of the Settlement Payment for their attorneys' fees and litigation expenses in an amount not to exceed twenty percent of the Settlement Payment plus the May 6 Payment. The attorneys' fees would pay Class Counsel for investigating the facts, filing actions in multiple states, litigating the case, negotiating the settlement, filing legal papers with the Court, and overseeing future implementation of the settlement, including fielding inquiries from FLSA Collective/National Class Members and State Law Subclass Members. Class Counsel has not been paid for their time or their litigation expenses since this case

was originally filed and would not have received any attorneys' fees or expenses had this lawsuit not been favorably resolved.

## 11. What other payments will be made from the Settlement Payment?

As is also provided by the Settlement, Class Counsel may also petition the Court for an award of service payments to the Class Representatives in an amount not to exceed $5,000 each for their service in stepping forward to commence the lawsuits that are subject to this Settlement against their employers (the "Service Payments").

The Settlement also allocates, as required by California law, an amount to be paid from the California State Law Subclass funds for civil penalties, 75% of which must be paid to the California Labor and Workforce Development Agency ("LWDA") pursuant to the California Private Attorney General Act. The parties have agreed that thirty thousand dollars ($30,000.00) will be allocated to such California civil penalties. Accordingly, if the Settlement is approved and becomes final, 75% of this amount ($22,500) will be paid out of the California Subclass allocation to the LWDA, and 25% of said amount ($7,500) shall remain for distribution to the California State Law Subclass.

The Settlement Payment, less any amounts awarded by the Court for Class Counsel's attorneys' fees and costs and for Service Payments to the Named Plaintiffs, and less the payment to the LWDA shall be the "Net Settlement Fund."

### OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the Settlement or some part of it.

## 12. How do I tell the Court that I don't like the Settlement?

If you are a National Class Member or a State Law Subclass Member and are not seeking to opt-out, you can object to the Settlement, or any part of it, including Class Counsel's applications for attorneys' fees and expenses or the Service Payments (the "Applications"). You should state why you think the Court should not approve the settlement, the Applications, or any part of them. The Court will consider your views. To object, you must send your objection or a letter saying you object to the settlement as directed herein. You must include your name, address, email address (if available), telephone number, signature, and the reasons you object to the settlement and/or any Application and state that your objection relates to *Stevens et al. v. PepsiCo. Inc. et al.*, Case No. 7-22-cv-00802, Case No. 7:22-CV-00802-NSR. You must mail your objection to the following counsel so that it is postmarked no later than [45 days after mailing notice], 2022, and file it electronically or mail it to the Court so that it is postmarked no later than [45 days after mailing notice], 2022, at the following addresses:

| On Behalf of the Class Representatives: | On Behalf of Defendants: | The Court: |
|---|---|---|
| Seth R. Lesser, Esq<br>Klafter Lesser LLP<br>2 International Drive, Suite 350<br>Rye Brook, New York 10573 | Alison R. Ashmore<br>Dykema Gossett LLP<br>1717 Main Street, Suite 4200<br>Dallas, TX 75228 | The Hon. Nelson S. Román<br>Federal Courthouse<br>Clerk of the Court<br>300 Quarropas Street<br>White Plains, NY 10601-4150 |

### 13. What's the difference between objecting and excluding?

Objecting is telling the Court that you don't like something about the Settlement or Applications, and that you, for that reason, want the Settlement or Applications or some part of them not to be approved or to be modified in some way. You can object only if you stay in the class. Excluding yourself means you don't want to be part of the class. If you exclude yourself, you have no basis to object because the case no longer affects you.

### THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement and Class Counsels' application for attorneys' fees, expenses and the Service Payments. You may attend and you may ask to speak, but you don't have to do so.

### 14. When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing on _____, 2022 at _____ ___.M. in Courtroom _____ at The Hon. Nelson S. Román , Federal Courthouse, 300 Quarropas Street White Plains, NY 10601-4150. At this Fairness Hearing, the Court will consider whether the Settlement is fair and meets the tests for class action and collective action settlements. The Court will also consider whether the Applications should be approved. If there are objections to any of these matters, the Court will consider them. The Court also will listen to people who have asked to speak at the hearing. At, or following the hearing, the Court will decide whether to approve the settlement and the Applications. We do not know how long these decisions will take. If the Court approves the settlement and the Applications, there may be appeals. It is always uncertain whether there will be an appeal and, if so, when it will be resolved. Please be patient.

The Final Approval Hearing shall be subject to adjournment by the Court without further notice to the members of the National Class or members of the State Law Subclasses other than those who are Objectors. If it is adjourned, the new date and time will be posted on _____[website].

### 15. Do I have to come to the hearing?

No. Class Counsel will answer any questions the Court may have. But you are welcome to come at your own expense. If you file an objection, you don't have to come to Court to talk about it, but you may. As long as you properly mailed (or electronically filed) your written objection on time, the Court will consider it. You may also pay your own lawyer to attend if you wish.

**16. May I speak at the hearing?**

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter stating that it is your "Notice of Intention to Appear in *Stevens et al. v. PepsiCo. Inc. et al.*, Case No. 7-22-cv-00802, Case No. 7:22-CV-00802-NSR." Your Notice of Intention to Appear must be filed or mailed so it is postmarked no later than _____, 2022 and be sent to the Clerk's Office and the Counsel at the addresses in Section 12 above. You cannot speak at the hearing if you exclude yourself from the class.

IF YOU DO NOTHING

**17. What happens if I do nothing at all?**

If you do nothing, you will be a part of this settlement (if the Court approves it) and will receive a settlement payment (provided you update your address, if necessary); your claims arising due to the Kronos Outage will be released as stated in Section 5 above; and Class Counsel's assistance in any dispute with any Defendant concerning the accuracy of the May 6 Payment.

GETTING MORE INFORMATION

**18. Are there more details about the settlement?**

This Notice summarizes the proposed Settlement. The pleadings and other records in this lawsuit, including a copy of the Settlement Agreement, are available for review at the following website: _____. They may also be examined during regular office hours at the Office of the Clerk at The Hon. Nelson S. Román's Federal Courthouse, 300 Quarropas Street White Plains, NY 10601.

You may also contact the Settlement Administrator as follows:

**PepsiCo Kronos Class/Collective Action Settlement**

**c/o _____ Administrator**

_____

_____

Phone ( )_____

Please **do not** contact the Court.

Dated _____, 2022                    BY THE COURT

_____

*Exhibit E*

## EXHIBIT E TO THE SETTLEMENT AGREEMENT

| ALLOCATION OF BENEFIT OF GROSS LIQUIDATED DAMAGE/PENALTY SETTLEMENT AMOUNT ($12.75 MILLION)* | | | | |
|---|---|---|---|---|
| **ALLOCATION OF BENEFIT TO THE FLSA COLLECTIVE AND NATIONAL CLASS MEMBERS** | | | | |
| Group 1: FLSA Collective and National Class Members who were net underpaid by at least $1 | **Number of Employees** | **Average Per Person** | **Total** | **Basis for Allocation to Individual Class Members** |
| | 23,801 | $350.00 | $8,330,350.00 | Pro Rata share based on amount of net underpayment |
| Group 2: FLSA Collective and National Class Members who were net overpaid, net neutral, or net underpaid by less than $1, and received inaccurate wage statements | **Number of Employees** | **Amount Per Person** | **Total** | **Basis for Allocation to Individual Class Members** |
| | 46,008 | $25.00 | $1,150,200.00 | Per Person |
| **ALLOCATION OF BENEFIT TO THE STATE LAW SUBCLASS MEMBERS** | | | | |
| **Group 3: California State Law Subclass** | **Number of Employees** | **Average Per Person** | **Total** | **Basis for Allocation to Individual Class Members** |
| Total Number of California State Law Subclass | 7,262 | | | |
| Members of California State Law Subclass who were underpaid at least once during the Kronos Outage | 6,849 | $346.14 | $2,370,737.63 | Pro Rata based on individual class member's number of underpaid pay periods |
| Members of California State Law Subclass who were exclusively overpaid | 413 | $25.00 | $10,325.00 | Per Person |
| **Group 4: New York State Law Subclass** | **Number of Employees** | **Average Per Person** | **Total** | **Basis for Allocation to Individual Class Members** |
| Total Number of New York State Law Subclass | 2,766 | | | |
| Members of New York State Law Subclass who were underpaid at least once during the Kronos Outage | 2,551 | $346.14 | $883,012.37 | Pro Rata based on individual class member's number of underpaid pay periods |
| Members of New York State Law Subclass who were exclusively overpaid | 215 | $25.00 | $5,375.00 | Per Person |
| **Total State Law Subclass Allocations** | | | $3,269,450.00 | |
| **Total Liquidated Damage/Penalty Settlement Amount** | | | $12,750,000.00 | |

*Gross amounts are before deductions for attorneys' fees, service payments, and payments under PAGA.